RECORD NO. 13-2375

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**GWEN HART, on behalf of herself and all others similarly situated, LUCILLE DRUTHER, JOSEPH DRUTHER, EDWARD WUELLNER, JENNIFER WUELLNER,**

*Plaintiffs-Appellants,*

v.

**LOUISIANA-PACIFIC CORPORATION,**

*Defendant-Appellee.*

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS**
**PUBLIC VERSION**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT ELIZABETH CITY**

Daniel K. Bryson
Scott C. Harris
WHITFIELD BRYSON & MASON, LLP
900 West Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000 (Telephone)
dan@wbmllp.com
scott@wbmllp.com

Counsel for Plaintiffs-Appellants
  Gwen Hart, Lucille Druther, Joseph Druther,
  Edward Wuellner, Jennifer Wuellner

Gary E. Mason
Nicholas A. Migliaccio
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Avenue, NW, Suite 605
Washington, DC 20036
(202) 429-2290 (Telephone)
gmason@masonlawdc.com
nmigliaccio@wbmllp.com

Counsel for Plaintiffs-Appellants
  Gwen Hart, Lucille Druther, Joseph Druther,
  Edward Wuellner, Jennifer Wuellner

Joel R. Rhine
Jean S. Martin
RHINE MARTIN LAW FIRM, P.C.
1612 Military Cutoff Road, Suite 300
Wilmington, North Carolina 28403
(910) 772-9960 (Telephone)
jrr@rhinelawfirm.com
jsm@rhinelawfirm.com

Counsel for Plaintiffs-Appellants
  Gwen Hart, Lucille Druther, Joseph Druther,
  Edward Wuellner, Jennifer Wuellner

Auley M. Crouch, III
Christopher K. Behm
BLOCK, CROUCH, KEETER, BEHM
  & SAYED, LLP
P. O. Box 4
Wilmington, North Carolina 28402
(910) 763-2727 (Telephone)
acrouch@bcklawfirm.com
jcbehm@bcklawfirm.com

Counsel for Plaintiffs-Appellants
  Gwen Hart, Lucille Druther, Joseph Druther,
  Edward Wuellner, Jennifer Wuellner

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____　　Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.　　Is party/amicus a publicly held corporation or other publicly held entity?　　YES　　NO


2.　　Does party/amicus have any parent corporations?　　YES　　NO
　　　If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.　　Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?　　YES　　NO
　　　If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
        (signature)                                            (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?                    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                             YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.      Does party/amicus have any parent corporations?                               YES     NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                               YES     NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____    _____
(signature)                                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

# CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____
      (signature)                                (date)

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS**...................................................................... i

**TABLE OF AUTHORITIES**........................................................... iii

**JURISDICTIONAL STATEMENT**.................................................. 1

**STATEMENT OF THE ISSUES**........................................................ 3

**STATEMENT OF THE CASE**............................................................ 3

**STATEMENT OF THE FACTS**........................................................ 10

**SUMMARY OF ARGUMENT**……….............................................. 17

**STANDARD OF REVIEW**………..................................................... 20

**ARGUMENT**........................................................................... 21

**I.    The District Court Erred in Decertifying the Class on
        the basis of *Christie***............................................. 21

**II.   The Court Should Have Allowed The Plaintiffs
        To Substitute New Class Representatives**................................. 29

**III.  The District Court Erred in Dismissing Appellants' Claims
        on the Basis of *Christie***........................................... 33

**a.   The *Christie* decision is inapplicable to this case**................... 33

**b.   *Christie* was wrongfully decided**.................................. 36

**c.   The purpose of the Statute of Repose is not Advanced by
        Barring Claims Under Warranties that Extend Beyond the Statute**..... 38

**CONCLUSION**......................................................................... 40

**CERTIFICATE OF COMPLIANCE**............................................... 42

**<u>CERTIFICATE OF SERVICE</u>**............................................................. 43

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

*ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
    472 F.3d 99 (4th Cir. 2006)............................................................. 8

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)................................ 20

*Brooks v. GAF Materials Corp.*
    8:11-CV-00983-JMC, 2012 WL 5195982 (D.S.C. Oct. 19, 2012)
    *clarified on denial of reconsideration,*
    8:11-CV-00983-JMC, 2013 WL 461468 (D.S.C. Feb. 6, 2013).......... 25 - 27

*Brown v. Nucor Corp.*
    576 F.3d 149 (4th Cir. 2009)......................................................... 20

*Broussard v. Meineke Disc. Muffler Shops, Inc.*
    155 F.3d 331 (4th Cir.1998)......................................................... 26

*Brunson v. Louisiana-Pac. Corp.*
    266 F.R.D. 112 (D.S.C. 2010)....................................................... 27

*Bussian v. DaimlerChrysler Corp.*
    411 F. Supp. 614 (M.D.N.C. 2006)................................................. 23

*Cameron v. E.M. Adams & Co.*
    547 F.2d 473 (9th Cir.1976)......................................................... 28

*Carlson v. General Motors Corp.*
    883 F.2d 287 (4th Cir. 1989)........................................................ 23

*Celotex Corp. v. Catrett*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)............................ 20

*Cox v. Babcock and Wilcox Co.*
    471 F.2d 13 (4th Cir. 1972).......................................................... 32

*Dameron v. Sinai Hosp. of Baltimore, Inc.*
595 F. Supp. 1404 (D. Md. 1984).................................................................. 31

*Doe v. Chao*,
306 F.3d 170 (4th Cir.2002)
*aff'd on other grounds,*
540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004)........................... 20

*Duprey v. Connecticut Dept. of Motor Vehicles*
191 F.R.D. 329 (D.Conn. 2000).................................................................. 29

*Ellis v. Louisiana-Pacific Corp.*
699 F.3d 778 (4th Cir. 2012)........................................................... 8, 22, 33

*Garofolo v. Donald B. Heslep Associates, Inc.*
405 F.3d 194 (4th Cir. 2005).................................................................. 20, 35

*Goodman v. Schlesinger*
584 F.2d 1325 (4th Cir. 1978).............................................................. 31 - 32

*Gunnells v. Healthplan Servs., Inc.*
348 F.3d 417 (4th Cir. 2003)........................................................... *passim*

*In re McKesson Governmental Entities Average Wholesale Price Litig.*
767 F. Supp. 2d 263 (D. Mass. 2011)......................................................... 29

*In re American Honda Motor Co., Inc. Dealers Relations Litig.*
979 F.Supp. 365 (D.Md.1997)................................................................... 25

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*
659 F.2d 1259 (4th Cir. 1981)......................................................... 24, 30 - 31

*Keegan v. Am. Honda Motor Co., Inc.*
284 F.R.D. 504 (C.D. Cal. 2012)
*leave to appeal denied,*
12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012)............................... 29

*Kremens v. Bartley*
431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977)................................. 30

*Quince Orchard Valley Citizens Ass'n v. Hodel*
        872 F.2d 75 (4th Cir.1989)........................................................ 20

*Reynolds v. Sheet Metal Workers, Local 102*
        702 F. 2d 221 (D.C. Cir. 1981)................................................... 30

*Riordan v. Smith Barney*
        113 F.R.D. 60 (N.D. Ill. 1986)................................................... 29

*Samuel v. Univ. of Pittsburgh*
        538 F.2d 991 (3rd Cir. 1976)...................................................... 7

*Smilow v. Sw. Bell Mobile Sys., Inc.*
        323 F.3d 32 (1st Cir. 2003)...................................................... 27

*Sosna v. Iowa*
        419 U.S. 393 (1975)............................................................... 30

*Thomas v. Louisiana-Pac. Corp.*
        246 F.R.D. 505 (D.S.C. 2007).................................................. 27

*Thorn v. Jefferson-Pilot Life Ins. Co.*
        445 F.3d 311 (4th Cir. 2006)................................................... 25

*Vaughns v. Board of Education of Prince Georges County*
        574 F. Supp. 1280 (D. Md. 1983)
        *order aff'd in part, rev'd in part on other grounds,*
        758 F. 2d 983 (4th Cir. 1985).................................................. 30

*Waste Management Holdings, Inc. v. Mowbray*
        208 F.3d 288 (1st Cir. 2000)................................................... 28

*Williams v. Sinclair*
        529 F.2d 1383 (9th Cir. 1975).................................................. 28

*Zinkand v. Brown*
        478 F.3d 634 (4th Cir. 2007).................................................. 33

State Authorities

*Christie v. Hartley Const., Inc.*
    745 S.E.2d 60 (2013)
    *review allowed,*
    359A13, 2013 WL 6730991 (Dec. 18, 2013)........................................ *passim*

*Colony Hill Condominium I Assoc. v. Colony Co.*
    70 N.C. App. 390, 320 S.E.2d 273 (1984)
    *disc. rev. denied,*
    312 N.C. 796, 325 S.E.2d 485 (1985)........................................................... 38

*Lamb v. Wedgewood S. Corp.*
    308 N.C. 419, 302 S.E.2d 868 (1983)................................................... 38, 39

*Roemer v. Preferred Roofing*
    190 N.C. App. 813, 660 S.E.2d 920 (2008)........................................ 4, 35-37

*Tetterton v. Long Manufacturing Co.*
    314 N.C. 44, 332 S.E.2d 67 (1985)........................................................ 39, 40

Rules and Statutes

Fed.R.Civ.P. 56(c)................................................................................................ 20

Rule 23(b)(3)................................................................................................. 28, 29

Rule 23............................................................................................................ 21, 22

N.C. Gen. Stat. § 25-2-302……………………………………………………… 6

Legal Treatises

5 James Wm. Moore et al.,
Moore's Federal Practice § 23.46[3] (3d ed.1999)................................................ 28

1 H. Newberg, Class Actions §1115 (1977)........................................................... 24

Newburg on Class Actions, §2:28 (4th Ed. 2002)................................................... 30

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 13-2375

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GWEN HART, JOSEPH DRUTHER LUCILLE DRUTHER, EDWARD WUELLNER, and JENNIFER WUELLNER, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| LOUISIANA-PACIFIC CORPORATION, | ) |
| | ) |
| Defendant-Appellee. | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS-APPELLANTS' BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

## JURISDICTIONAL STATEMENT

Appellant Gwen Hart owns a home in Dare County, North Carolina. Appellants Joseph Druther, Lucille Druther, Edward Wuellner, and Jennifer Wuellner own homes in Wake County, North Carolina. This breach of warranty suit is brought as a class action against Defendant/Appellee Louisiana-Pacific Corporation ("LP"), the manufacturer and seller of TrimBoard, an allegedly defective exterior trim product installed on Appellants' homes.

This action is within the original jurisdiction of the United States District Court by virtue of 28 U.S.C. § 1332(d)(2). The Plaintiffs/Appellants are citizens of a different state from the Defendant/Appellee, and the amount in controversy in this class action exceeds five million dollars ($5,000,000), exclusive of interest and costs. Venue in the Eastern District of North Carolina is appropriate under 28 U.S.C. § 1391 because the event or omission giving rise to claims occurred in that District.

Pursuant to 28 U.S.C. § 1291, Appellants appeal from a final judgment of the United States District Court for the Eastern District of North Carolina, Northern Division, entered by the Honorable Terrence W. Boyle dismissing Appellants' claims and decertifying the class he had previously certified. (App pp. 3244-3250). The reasoning behind Judge Boyle's Judgment was set forth in his Order of September 3, 2013, granting Appellee's Motion for Reconsideration of the

Court's Order Denying Partial Summary Judgment and Declining to Decertify the Class (App. pp. 1037-1040). Appellants filed a timely Notice of Appeal. (App. pp. 3274-3276).

## STATEMENT OF THE ISSUES

1. Whether the District Court abused its discretion in decertifying the class by finding that individualized determinations relating to the statute of repose destroy typicality, predominance, and otherwise foreclose class certification.

2. Whether the District Court erred in denying Plaintiffs the opportunity to intervene and substitute as class representatives members of the class who were not subject to the statute of repose under its erroneous application of *Christie v. Hartley Const., Inc.*, 745 S.E.2d 60 (N.C. App. 2013) *review allowed*, 359A13, 2013 WL 6730991 (Dec. 18, 2013).

3. Whether the District Court erred in granting Louisiana-Pacific's motion for summary judgment based upon an erroneous application of the two-to-one opinion handed down by the North Carolina Court of Appeals in *Christie*.

## STATEMENT OF THE CASE

This matter is on appeal from the Memorandum Opinion and Order (App. pp. 3244-3248) and the Judgment (App. pp. 3249-3250), entered in the United States District Court for the Eastern District of North Carolina in this action on September 3, 2013 by the Honorable Terrence W. Boyle. Judge Boyle's Order

3

does not address the merits of Appellants' case on either summary judgment or class decertification – it only rules on the applicability of the *Christie* decision and the statute of repose.  Under his ruling, Appellants are barred by the statute of repose from bringing this action and serving as class representatives because they seek "damages" as that term is used in *Christie*.  As such, this appeal only concerns the applicability of *Christie* to the nature of relief sought in the *Hart* action.

This lawsuit was initiated as a putative class action by a Complaint filed on October 22, 2008, in Superior Court, Dare County, North Carolina, for breach of express warranty in connection with the Trimboard building product, manufactured and sold by LP and installed on Appellant Hart's home.  The case was removed to the United States District Court for the Eastern District of North Carolina on November 21, 2008.

On May 12, 2009, LP filed a Motion for Judgment on the Pleadings seeking dismissal of the case on the ground that the only remedy available after the statute of repose had run, as it had for any tort claims Hart could have alleged, was specific performance, *citing Roemer v. Preferred Roofing*, 190 N.C. App. 813, 660 S.E.2d 920 (2008).  On November 19, 2009, Judge Boyle denied LP's Motion, ruling that: "A claim for breach of express warranty may be brought after the expiration of the 6-year statute of repose if the express warranty period extends beyond the statute of repose. . . . because the express warranty here provides that

4

damages are the only remedy available, Plaintiff is not limited to specific performance as a remedy for her breach of express warranty claims." November 19, 2009 Order (App. pp. 174-177) at 3-4.

On September 21, 2009, Plaintiffs Lucille and Joseph Druther and Edward and Jennifer Wuellner, who also had Trimboard on their homes, joined with Hart to file an Amended Class Action Complaint which asserted the same claims and has since been the operative Complaint in this action. (App. pp. 141-159).

After extensive class discovery, Plaintiffs/Appellants filed their Motion for Class Certification on November 10, 2011. (App. pp. 178-182). On July 18, 2011, the Court issued an Order Granting Motion for Class Certification, finding the predominant common issues in this case to be: (i) whether LP knew that Trimboard was defective at the time the Warranty attached, (ii) whether the Warranty was unconscionable under these circumstances, and (iii) whether the Warranty should be reformed as a result. (App. pp. 1027-1036). In its Order, the Court specifically observed:

> Plaintiffs argue that the warranty is void as unconscionable. They allege detailed facts showing that Trimboard was defective from the moment it left its manufacturing, that ABTCO knew of the defect, and that ABTCO failed to disclose the defect. Plaintiffs further allege that Defendant deliberately crafted the warranty to minimize customer recovery regarding the defect. For example, the Plaintiffs argue that the installation instructions were defective so that the installers would necessarily have to deviate from the instructions, thereby voiding the warranty. Plaintiffs also claim that the warranty in effect in 1999-2001, which covers the named Plaintiffs, warned

5

> that Trimboard should not be exposed to lawn sprinklers and "rain." Plaintiffs argue this is a clear admission that Trimboard was not fit for exterior use. As a result, Plaintiffs argue the warranty was unconscionable under these circumstances. Plaintiff thus seeks remedies beyond the warranty under N.C. Gen. Stat. § 25-2-302 for an "unconscionable contract or clause."

July 18. 2011 Order, at 3. The District Court further found that the Plaintiffs met all of the other necessary elements of Rule 23 class certification. *Id*. at pp. 4-10.

On July 29, 2011, LP filed a motion for reconsideration of the Court's Order on class certification. (App. pp. 1037-1040). By Order dated November 11, 2011, the Court denied LP's Motion.(App. pp. 1194-1197). LP's Rule 23(f) petition for leave to appeal was denied by the Fourth Circuit on December 22, 2011. *See Louisiana-Pacific Corporation v. Hart*, No. 11-297 (Order denying Permission to Appeal, 4th Cir. December 22, 2011). After the close of merits discovery, LP filed a motion to decertify the class on January 9, 2013, arguing that questions of individual damages preclude class certification, (App. pp. 1233-1237) and, on February 28, 2013, a motion for partial summary judgment. (App. pp. 1903-1907). Plaintiffs/Appellants filed their Opposition to Decertification on January 14, 2013 (App. pp. 1613-1635) and Opposition to Partial Summary Judgment on March 21, 2013, with numerous cites to record evidence in support (App. pp. 2039-2065).

Plaintiffs argued in their opposition to LP's Motion for Partial Summary judgment that LP had not met its burden on summary judgment of demonstrating the absence of a genuine issue of material fact with respect to what it knew or

6

should have known about Trimboard's unsuitability for outdoor use (substantive unconscionability), and the Plaintiffs' and class members' lack of bargaining power regarding its one-sided warranty (procedural unconscionability). (App. p. 2056). Indeed, Plaintiffs submitted numerous cites to evidence supporting a finding that LP knew or should have known that Trimboard was unsuitable for outdoor use and would fail well before expiration of its expected useful life, and that Plaintiffs had no bargaining power with respect to LP's one-sided warranty. (App. pp. 2039-2065). Plaintiffs argued that under the totality of the circumstances any unconscionable terms and provisions of LP's warranty should be stricken under N.C.G.S. § 25-2-302. (App. pp. 2039-2065).

On March 29, 2013, Judge Boyle filed an Order denying both LP's motion to decertify and its motion for partial summary judgment. (App. pp. 2693-2700). With respect to decertification, Judge Boyle reiterated that common questions predominated:

> Though LP argues that class membership, damages, and causation must all be determined individually, the common issues in this litigation remain whether LP knew that Trimboard was defective at the time that the warranty attached, whether the warranty was unconscionable under these circumstances, and whether the warranty should be reformed as a result. Even if the Court would be required in this instance to make factual determinations as to individual class members, such determinations must be made "in almost every class action," and "this [should not prevent] a court from aiding the class to obtain its just restitution. *Samuel v. Univ. of Pittsburgh*, 538 F.2d 991, 995 (3rd Cir. 1976). Finally, the Fourth Circuit has already expressed that this action is "the proper place [for class members] to

7

raise issues with respect to the [Trimboard] warranty and LP's alleged violation of it." *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 788 (4th Cir. 2012).

March 29, 2013 Order, at 3-4.    With respect to partial summary judgment, the

District Court was likewise unwavering:

> As noted by plaintiffs, a critical issue in this matter is whether LP knew of an inherent defect in its Trimboard product, hid that defect from the public, and issued a one-sided warranty containing unconscionable terms limiting liability.  Indeed, while LP is correct to note that limitations of damages are permitted in warranties, N.C. Gen. Stat. § 25-2-719, LP has failed to rebut plaintiffs' allegation that it in fact knew that Trimboard was a defective product and that it crafted a liability-limiting warranty accordingly.  In response to the motion for summary judgment, plaintiffs have proffered evidence that Trimboard is made from the same material as hardboard (Pls' Ex. 20), a product first manufactured by ABT Building Products and later sold by LP (Pls' Ex. 19) that was the subject of an earlier class settlement, *see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99 (4th Cir. 2006); that hardboard is an unsuitable material for use as exterior siding (Pls' Ex. 27); and that even with proper installation and typical maintenance, exterior installed Trimboard fails within its expected service life.  Pls' Ex. 58 & 59 at 2-3.

*Id.* at 6.  The District Court then set the case for trial during its August 2013 term.

On July 16, 2013, the North Carolina Court of Appeals handed down its

Opinion in *Christie*, essentially ruling that a warranty claim for "damages" could

not be sustained if the statute of repose had run by the time of filing suit.[1]  On July

19, 2013, relying on *Christie*, LP again filed a motion for summary judgment

---

[1]  *Christie* was a two-to-one decision and is presently on appeal to the North Carolina Supreme Court. The undersigned law firm of Whitfield, Bryson & Mason LLP represents the appellant in *Christie*, and the North Carolina Supreme Court will likely hear oral argument in *Christie* in April or May, 2014.

arguing that Plaintiffs' claims, brought after the expiration of the statute of repose but prior to the expiration of the express warranty, were time-barred. Plaintiffs opposed LP's motion for summary judgment, arguing, among other things, that the holding of *Christie* was inapplicable to the facts of this case and seeking, in the alternative, an opportunity to intervene and substitute other class members who could not have been impacted by any interpretation of *Christie*. (App. pp. 3155-3160).

On September 3, 2013, based entirely on the *Christie* ruling, the District Court issued its Order now under appeal granting LP's motion for summary judgment and decertifying the class. (App. pp. 1037-1040). Specifically, the District Court found that:

> *Christie* now directs that the statute of repose does bar an action for damages, even if the terms of the warranty extend beyond the applicable period of repose. Therefore, the task of determining which plaintiffs would be permitted to bring an action for damages would necessarily require an individualized determination of "the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement." N.C. Gen. Stat. § 1-50(a)(5). The necessity for such a determination does in fact destroy "typicality, ... predominance, [and] otherwise foreclose class certification." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417,427-28 (4th Cir. 2003).

On September 17, 2013, Plaintiffs filed a motion for reconsideration of the Court's September 3, 2013 Order, which addressed both the applicability of *Christie* and the propriety of decertification in light of *Christie,* which had not been

9

previously briefed by the parties. (App. pp. 3251-3253). Plaintiffs also moved to reconsider on the basis of the fact that this Court had already expressed that the *Hart* action was "the proper place [for class members] to raise issues with respect to the [Trimboard] warranty and LP's alleged violation of it." *Id*. On November 12, 2013, the Court denied Plaintiffs' motion for reconsideration. (App. pp. 3531-3533).

## STATEMENT OF THE FACTS

Plaintiffs alleged that LP designed, marketed and sold Trimboard to be used as an exterior trim product, i.e., as fascia, soffit, corner board, window trim, door trim, and general exterior use on homes, apartments, condominiums, buildings and other structures. (App. p. 141). Plaintiffs also alleged that LP held itself out as knowledgeable in the design and manufacture of exterior building products and represented that Trimboard was a high quality product that was superior to wood for use as exterior trim. (App. pp. 144, 153).

Plaintiffs alleged that, despite Defendant's representations to Plaintiffs' builders, contractors, and suppliers that Trimboard is a superior exterior trim, Trimboard rots, delaminates, and otherwise fails under normal conditions of use and exposure. (App. pp. 145, 153). Plaintiffs generally allege that LP, and its predecessor ABTCO, knew of the defective nature of Trimboard since before 2000, yet continued to market the product until approximately 2008. (App. pp.

10

141-159)  Plaintiffs own homes on which Trimboard had been installed.  (App. pp. 141-159).

LP's Express Warranty, which covered the Trimboard on the Hart, Druther, and Wuellner homes, contained the following provisions and limitations which are directed by their terms to the owner of the structure with Trimboard:

> ABT Building Products Corporation warrants its TrimBoard, exclusive of finish, against defects in material delamination, checking, splitting, cracking and chipping of the basic substrate due to faulty manufacturing processes for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as specified in ABTco. Inc.'s Application Instructions.

LP Warranty (App. p. 159).  The Warranty continues by providing a remedy for failed Trimboard as follows:

> **Should the product fail within ten years of the date of installation**, ABTco, Inc. after investigation and verification, will replace the defective trim on the following basis: ABTco will compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price of the affected trim if failure occurs within ten year.

*Id.* (emphasis added).   Appellants contend that any unconscionable terms and provisions of LP's Express Warranty should be stricken under N.C.G.S. § 25-2-302.  (App. p. 159).

LP uses a claims procedure and a warranty claim form to process warranty claims made relating to Trimboard.  (App. pp. 141-159).  The claims procedure and warranty claim form contains requests for proof of product installation date.

11

The allegations of fact underpinning the District Court's grant of class certification, and directing the merits discovery that would be conducted over the next two and a half years, are set forth in Plaintiffs' Memorandum in Support of Motion for Class Certification (App. pp. 3534-3563).     As alleged in that Memorandum, Defendant sold Trimboard directly or indirectly, through authorized dealers and retail outlets, to homeowners, developers, contractors and/or subcontractors for use as fascia, soffit, corner board, window trim, and door trim and for general exterior use on homes, apartments, condominiums, buildings, and other structures.   Plaintiffs own homes that contain Trimboard that is already failing, as well as Trimboard that is defective but has not yet manifested signs of failure.  (App. pp. 141-159).  With the exception of Plaintiff Hart, the Trimboard was incorporated into the named Plaintiffs' homes before they purchased the homes.  (App. pp. 141-159).

In conjunction with each sale of Trimboard, Defendant marketed, advertised and warranted that the Trimboard was fit for the ordinary purpose for which such goods were used, was free from defects in materials and workmanship, and was suitable for exterior use.  (App. p. 150).   LP also warranted ". . . that the Product substrate will not delaminate, check, split, crack, or chip for a period of ten years from the date of installation under normal conditions of use and exposure." (App. p. 142).

12

Appellants also allege that LP knew or should have known that Plaintiffs' and Class Members' builders, subcontractors, and/or agents would rely upon LP's representations, marketing and warranties regarding the quality of Trimboard. (App. p. 142). Appellants further allege that, contrary to LP's representations, Trimboard delaminates, checks, splits, cracks, and chips under normal conditions of use and exposure, (App. p. 151), and that Trimboard, at the time of leaving LP's control, was defective because it prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water, warps, and/or bulges under normal conditions and natural, outdoor exposure causes consequential water and structural damages; and promotes the growth of mold, mildew, fungi, and insect infestation in the structures in which it is installed. *Id.* Plaintiffs allege that these defects reduce the effectiveness and performance of the Trimboard and render it unable to perform the ordinary purposes for which it was used, and that, in addition to the known failures in Trimboard, the product also failed to meet applicable national standards for medium density fiberboard and was defective from the time it left the manufacturing plant. (App. pp. 141-159).

Plaintiffs allege that LP also failed to provide adequate instructions for the installation of Trimboard. (App. pp. 141-159). For example, the ABTCO installation instructions are totally devoid of any reference to the need to seal and to prime "site-cut" ends of the Trimboard. "Site-cut" means sawing the Trimboard

13

at the construction site to the size actually needed for its application, rather than the common lengths in which the boards are manufactured and sold. "Site-cut" ends are particularly vulnerable to the entry and entrapment of water, which in turn leads to the product's demise.  *Id.*   Plaintiffs allege that LP's installation instructions are misleading and, in some cases, contrary to good construction practices, specifically as they relate to flashing and caulking.  (App. p. 145). Plaintiffs allege that Plaintiffs' and Class Members' builders, subcontractors and agents utilized and followed the installation instructions provided by ABTCO for the installation of the Trimboard that they purchased from ABTCO or its distributors in the construction of Plaintiffs' residences and the structures included in the Class.  (App. p. 145).  Alternatively, Plaintiffs allege that LP wrongly assumed that typical construction site workers would read, understand, and implement the complex instructions supplied. *Id.*  Therefore, even when typical, good, and workmanlike construction practices are used to install Trimboard, LP's Trimboard is inherently defective and fails to perform as intended.  (App. pp. 141-159).

Plaintiffs also allege that at the time LP sold Trimboard to Plaintiffs' builders, LP was fully aware of the defects in its product.  Trimboard was manufactured from 1998 to 2008 at the Roaring River plant in North Carolina. (App. p. 3543).  The basic composition of Trimboard remained the same from

14

October 1998 through mid-April 2008, when LP stopped its manufacture. *Id.* In approximately 1999, LP acquired ABTCO, and continued, under ABTCO's name, to manufacture Trimboard and the related ABTCO hardboard siding from which Trimboard is made. (App. p. 3543). The total linear feet of Trimboard sold in the State of North Carolina during the years 1998-2007 was approximately 22,517,500. (App. p. 3543). There could be more than 10,000 homes in North Carolina containing defective Trimboard. *Id.*

Plaintiffs allege that ABTCO possessed early knowledge that Trimboard might have a problem when exposed to normal moisture conditions. (App. p. 3543). The warranty in effect in 1999-2001 warned that Trimboard should not be exposed to sources of moisture common to exterior environments, such as lawn sprinklers and "rain," thus, Plaintiffs claim, clearly admitting that Trimboard was not fit for exterior use and that LP knew of this defect. *Id.* Moreover, in the late 1990s and early 2000s, ABTCO's hardboard siding, with an identical composition as Trimboard, was the subject of numerous lawsuits alleging that the siding was susceptible to degradation and failure due to moisture absorption. (App. p. 3544). These cases resulted in a national class settlement for the siding (non-trim) product. *Id.* Although Trimboard was created through simply gluing together two pieces of defective hardboard siding, ABTCO and LP continued to manufacture

15

Trimboard for use as exterior trim and market it as superior to other wood products. (App. pp. 3542-3543).

[redacted]

[redacted]

**SUMMARY OF ARGUMENT**

*First*, the District Court erred in decertifying the class by holding that under *Gunnells* individualized determinations relating to the statute of repose destroy typicality and predominance and otherwise foreclose class certification. Contrary

to the District Court's Order, the Fourth Circuit in *Gunnells* held that "Rule 23 contains *no suggestion* that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. *Gunnells*, 348 F.3d 428 (emphasis supplied).   Accordingly, the District Court abused its discretion because it fundamentally misapprehended *Gunnells.*

This Court should find, consistent with *Gunnells*, that any individual statute of repose issues that may arise and may affect different class members differently do not compel a finding that individual issues predominate over common ones, especially here, where Plaintiffs-Appellants only seek reformation of unconscionable limitations in an express warranty, and not individual damages. Indeed, LP currently requests information relating to the construction of claimants' homes in its warranty claims process.  Thus, even assuming arguendo that *Christie* was correctly decided and applies here, the date of "substantial completion of the structure" within the meaning of the statute of repose would necessarily be determined during the claims process and would not necessitate individual determinations by the District Court.

*Second*, the District Court erred in denying Plaintiffs the opportunity to intervene and substitute as class representatives members of the class who were not subject to the statute of repose under its erroneous application of *Christie*.  It is

18

well-settled in the Fourth Circuit that substitution of class representatives is appropriate in circumstances like these. Accordingly, the Plaintiffs should be afforded the opportunity to intervene and substitute as class representatives members of the class who were not subject to the statute of repose under the District Court's erroneous application of *Christie.*

*Finally*, the District Court erred in granting Louisiana-Pacific's motion for summary judgment based upon an erroneous application of *Christie.* The *Christie* decision is inapplicable to this case because, unlike the warranty at issue in *Christie*, LP's Trimboard Express Warranty provided not only a time limit that extended beyond the statute of repose but also specifically offered monetary compensation as the remedy for aggrieved homeowners.    Thus, specific performance under it would necessarily result in monetary compensation. Accordingly, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party, this Court should find that Plaintiffs are not seeking "damages" as that term is used in *Christie.*

Moreover, *Christie* was wrongfully decided, and since LP's warranty provided for monetary compensation over a 10-year period, the purpose of the statute of repose is not advanced by barring Appellants' right to reformation of the warranty and an award of appropriate compensation through LP's claims process.

19

## STANDARD OF REVIEW

A district court's decision on class certification is reviewed for abuse of discretion. *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (*citing Doe v. Chao*, 306 F.3d 170, 183 (4th Cir.2002), *aff'd on other grounds*, 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004)). A district court may abuse its discretion by "misapprehending the law with respect to underlying issues." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 434 (4th Cir. 2003) (*quoting Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 78 (4th Cir.1989).

A district court's order granting summary judgment is reviewed de novo, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. *Garofolo v. Donald B. Heslep Associates, Inc.*, 405 F.3d 194, 198-99 (4th Cir. 2005). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In particular, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

20

**ARGUMENT**

## I.   The District Court Erred in Decertifying the Class on the basis of *Christie*

The District Court decertified the class solely on the ground that individual inquiry into the statute of repose as to each class member would be required under its reading of *Christie*.  Specifically, the District Court found that *Christie* "now directs that the statute of repose does bar an action for damages," and that "the task of determining which plaintiffs would be permitted to bring an action for damages would necessarily require an individualized determination of "the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement" under the North Carolina statute of repose. (App. p. 3247)  Citing *Gunnells*, the District Court held that the "necessity for such a determination does in fact destroy typicality, ... predominance, [and] otherwise foreclose class certification." *Id.* (internal quotations deleted). Appellants submit that the District Court misapprehended *Gunnells*, and for this reason should be reversed.

In its July 18, 2011 Order granting class certification, the District Court, in discussing the commonality and typicality requirements of Rule 23, recognized the predominant common issues in this case as: (i) whether LP knew that Trimboard was defective at the time the Warranty attached, (ii) whether the Warranty was unconscionable under these circumstances, and (iii) whether the Warranty should

21

be reformed as a result. July 18, 2011 Order, at 7. The Court also noted that individual questions would not predominate since Rule 23 explicitly envisions class actions with individualized damage determinations. July 15, 2011 Order, at 9.

Indeed, Plaintiffs seek only a reformation of the Warranty consistent with prior rulings of the District Court and this Court.[2]  Even assuming arguendo that *Christie* was correctly decided and applies here, because LP currently requests information relating to the construction of claimants' homes in its warranty claims process, the date of "substantial completion of the structure" within the meaning of the statute of repose would necessarily be determined during the claims process and would not entail individual determinations by the District Court.  As the District Court previously recognized, the predicate findings for reformation:

> . . .  all relate to a course of alleged conduct by Defendant arising out of a common nucleus of operative facts, i.e., its producing and selling a defective product, its decision to continue to produce and market that product despite its knowledge of the defects, and its efforts to hide the nature of the defects from the consumer.

July 18, 2011 Order at 7.

Even subsequent to the District Court's hearing of January 2, 2013, Magistrate Judge James E. Gates entered an order granting Plaintiffs' access to

---

[2] In *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 783 (4th Cir. 2012), this Court cited the *Hart* case as controlling: "In short, Appellants allege that LP knew that Trimboard would not live up to the terms of the warranty and should have disclosed this fact to consumers, but this is simply another way of claiming that LP breached its express warranty to consumers – the claim Appellants are pursuing in the *Hart* action.")

expert reports and deposition transcripts in LP's prior hardboard siding and Trimboard litigation finding that what defendant knew or should have known as to TrimBoard's defects before entering into warranties with plaintiffs was relevant to Plaintiffs' claim. *See Carlson v. General Motors Corp.*, 883 F.2d 287, 292-93 (4th Cir. 1989) (holding in reversing dismissal of unconscionability claims that proof that the defendant "knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable'"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 614, 622-23 (M.D.N.C. 2006) (recognizing in denying motion to dismiss that defendant's alleged awareness of a latent defect could be a basis under North Carolina law for unconscionability of the limitations of the express warranties at issue and that plaintiffs should be permitted to develop evidence of such awareness).

Despite its previous rulings, however, the trial Court misapprehended the reasoning of *Gunnells,* and therefore erred in decertifying the class. The Court held in its September 3, 2013 Order that the *Christie* decision mandated decertification because individual determinations relating to the statute of repose "destroy 'typicality, ... predominance, [and] otherwise foreclose class certification.' September 3, 2013 Order at p. 4 (*quoting Gunnells*, 348 F.3d at 427-28). Yet, the

23

Fourth Circuit in *Gunnells* said just the opposite, holding that "Rule 23 contains *no suggestion* that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification." *Id*. at 428 (emphasis added); *see also Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981) (even though the district court correctly found that the named plaintiff's claims were time-barred, it did not destroy the viability of the other putative class members' claims because courts "passing upon motions for class certification have generally refused to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's case.") (*citing* 1 H. Newberg, Class Actions §1115 at 190 & n. 68 (1977)).  Thus, pursuant to *Gunnells* and other Fourth Circuit precedent, affirmative defenses, such as individual statute of repose determinations, *do not* necessarily defeat predominance or otherwise preclude class certification, especially here where the Plaintiffs and the class are not seeking damages, but rather solely reformation of LP's warranty.  Moreover, as previously noted, the District Court will not be making individual determinations of a when a class members' home was substantially completed.

There is a legion of other authority for the proposition that the need for individualized statute of limitations inquiries does not *necessarily* defeat predominance or otherwise foreclose class certification. For example, in *Brooks v.*

24

*GAF Materials Corp.*, 8:11-CV-00983-JMC, 2012 WL 5195982 (D.S.C. Oct. 19, 2012), *clarified on denial of reconsideration,* 8:11-CV-00983-JMC, 2013 WL 461468 (D.S.C. Feb. 6, 2013), the court addressed this very issue and held that it did not preclude class certification. The plaintiffs in *Brooks*, like in this action, claimed that the defendant knowingly manufactured, deceptively marketed, and intentionally sold a defective building product. *Id.* The defendant argued that its affirmative defenses, including the statute of limitations, would require individualized determinations that should preclude class certification. *Id.* at * 8. The court, citing *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 327-28 (4th Cir. 2006) found that "*such inquiries do not prevent class certification* and the statute of limitations is not a complete bar to class certification in the Fourth Circuit." *Id.* (emphasis added).

In reaching this determination, the *Brooks* court held that, the "paramount concern for the court is not merely the number of individual inquiries that may be required, but rather whether the nature of the individual inquiries involved is so complex as to outweigh the nature of the common issues sought to be resolved by class treatment." *Id.*, *citing Gunnells*, 348 F.3d at 429 (holding that multiple individual inquiries into causation will not defeat class certification where common issues predominate) and *In re American Honda Motor Co., Inc. Dealers Relations Litig.*, 979 F.Supp. 365, 366–67 (D.Md.1997) (noting that predominance is a

25

qualitative rather than a quantitative inquiry). The *Brooks* court correctly interpreted *Gunnells*, and found as "taken out of context" *Gunnells*' statement that "we have flatly held that 'when the defendants' affirmative defenses ... may depend on facts peculiar to each plaintiff's case, class certification is erroneous'" *Brooks*, 2012 WL 5195982 at * 8, n. 7 (*quoting Gunnells*, 348 F.3d at 438, and *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir.1998)). The *Brooks* court reasoned that "[c]ertainly, when the claim filed is not a broad allegation of the same action by the defendant causing harm to many individual plaintiffs, the defendant's actions towards each individual and that person's response tend to predominate, and class certification is not appropriate." *Id*. (*citing Broussard*, 155 F.3d at 343–44 (determining that the class decertified was a hodgepodge of factually and legally different plaintiffs, and that therefore, the disparate nature of the claims precluded class treatment); *Thorn*, 445 F.3d at 323 (finding that the proposed class members were not so homogeneous that they all received notice of the defendant's illegal practice at the same time and were affected in the same manner).

However, the *Brooks* court found that the instant case was factually distinguishable because, as here, the plaintiffs alleged that a singular action (the knowing manufacture and sale of a defective product) harmed all class members in the same manner (the [product] cracked and caused similar damage to their

26

homes). This is an appropriate "common" determination for class certification. *Brooks,* 2012 WL 5195982 at * 8, n. 7 (*citing Gunnells*, 348 F.3d at 424–25; *Brunson v. Louisiana-Pac. Corp.*, 266 F.R.D. 112, 119 (D.S.C. 2010); *Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505, 516-17 (D.S.C. 2007)).   In finding the predominance requirement met, the *Brooks* court stated that "[a]bsent class certification, each potential plaintiff would be required to repetitively litigate these allegations involving common issues of law and facts using repetitive testimony from the same witnesses and experts and duplicative arguments from counsel, which may result in potentially incongruous rulings." *Brooks,* 2012 WL 5195982 at * 8 "It seems the most efficient and expedient way of handling the matter is to certify the redefined class for the common issues and allow individual determinations of affirmative defenses and individual damages where necessary. Accordingly, although the affirmative defenses may need to be handled individually, they will not bar class certification." *Id*.   The *Brooks* case is completely analogous to the case at bar, and the same result should follow here for the reasons set forth in *Brooks*.

Other jurisdictions have similarly concluded that potential individual inquiries relating to affirmative defenses do not automatically defeat class certification. *See e.g.*, *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (collecting authority and noting that "[c]ourts traditionally have been

reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.").

For example, the First Circuit in *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000), stated that

> Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).

*Id.*(*citing* 5 James Wm. Moore et al., Moore's Federal Practice § 23.46[3], at 23-210 to -211 (3d ed.1999).

Similarly, the Ninth Circuit in *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976),  stated that:

> The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases. [    ]. Similarly, our examination of the record in the instant case convinces us that, even if there exists questions of individual compliance with the Oregon statute of limitations, they are not sufficient, on balance, to negate the predominance of the common issues.

*Id*. (quoting *Williams v. Sinclair*, 529 F.2d 1383, 1386-88 (9th Cir. 1975) (internal citations and quotations omitted); *see also Keegan v. Am. Honda Motor Co., Inc*.,

28

284 F.R.D. 504, 545 (C.D. Cal. 2012), *leave to appeal denied*, 12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012) (finding predominance requirement met and certifying class despite individual statute of limitations issues); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 273 (D. Mass. 2011) (holding that defendant's asserted statute of limitations defense does not defeat class certification); *Duprey v. Connecticut Dept. of Motor Vehicles*, 191 F.R.D. 329, 340-41 (D.Conn. 2000) ("numerous courts have held that the presence of a statute of limitations defense to some of the class members' claims does not defeat certification"); *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986) ("individual problems involving statutes of limitations and ascertainment of damages do not preclude a finding of predominance under Rule 23(b)(3)").

Accordingly, this Court should find that the mere fact that individual statute of repose issues may arise and may affect individual class members differently does not compel a finding that individual issues predominate over common ones, especially here, where Plaintiffs only seek a common determination of reformation of unconscionable limitations in an express warranty, and not individual damages.

## II. The Court Should Have Allowed The Plaintiffs To Substitute New Class Representatives.

While the District Court granted summary judgment against the named Plaintiffs under its (erroneous) interpretation of *Christie*, summary judgment cannot be granted as to all of the remaining unnamed class members who are not

29

affected by the statute of repose under its interpretation of *Christie*. Indeed, where the class representatives are found to be inadequate for any reason, the claims of absent class members remain viable independently from those of the class representatives. *See* Newburg on Class Actions, § 2:28 (4th Ed. 2002); *see also Sosna v. Iowa*, 419 U.S. 393, 399 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interests asserted by the appellant"); *Kremens v. Bartley*, 431 U.S. 119, 134–35, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (ordering "substitution of class representatives with live claims" where named plaintiffs' claims were determined to be moot); *Vaughns v. Board of Education of Prince Georges County*, 574 F. Supp. 1280 (D. Md. 1983), *order aff'd in part, rev'd in part on other grounds*, 758 F. 2d 983 (4th Cir. 1985) (even where the class representatives no longer have live stakes in the litigation, the case is not moot and new class representatives should be appointed); *Reynolds v. Sheet Metal Workers, Local 102*, 702 F. 2d 221 (D.C. Cir. 1981) (once a class is certified, it continues to exist apart from the named plaintiffs' interest, and attacking that interest would not affect the remaining class).

It is well-settled in the Fourth Circuit that substitution of class representatives is appropriate in circumstances like these. For instance, in *Int'l Woodworkers of Am.,* an employment discrimination action, the district court

denied class certification summarily and without explanation. However, on appeal, the Fourth Circuit found that the district court acted prematurely in denying class certification and remanded the case to the district court to "permit a proper plaintiff or plaintiffs ... to present themselves to the court to pursue the claim as class representatives." *Int'l Woodworkers,* 659 F.2d at 1270 (*citing Goodman v. Schlesinger,* 584 F.2d 1325, 1332–33 (4th Cir.1978) (emphasis added). *Int'l Woodworkers of Am.* was also cited by *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1409 (D. Md. 1984) in holding that if the current class representative's claims were barred by the statute of limitations, another could step forward. *Id.* at 1409.  In *Goodman*, the district court denied the plaintiffs' motion for class certification on the grounds that the plaintiffs did not comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.*, 584 F.2d at 1327. At trial on the plaintiffs' individual claims, the district court found against the plaintiffs and denied their individual claims. *Id.*, 584 F.2d at 1329-1331.  On appeal, the plaintiffs challenged the district court's rulings on both the denial of class certification and the dismissal of the individual claims. While this Court affirmed the dismissal of the plaintiffs' individual claims and noted that the plaintiffs "have had their day in court" to pursue their individual claims, the court determined that the district court acted prematurely in declining to certify the class action. This Court  then remanded the class action to the district court to retain the

31

case on the docket for a reasonable time to permit a proper plaintiff or plaintiffs, with grievances similar to [the plaintiffs on appeal], in person, to present himself to prosecute the action as class representative. *Goodman*, 584 F.2d at 1331-1333; *see also Cox v. Babcock and Wilcox Co.*, 471 F.2d 13, 16 (4th Cir.1972) (remanding to allow counsel a "reasonable time" to find new plaintiffs with live claims).

Indeed, on multiple occasions, LP has previously argued that the *Ellis* plaintiffs are adequate and representative members of the class in *Hart*, and based upon LP's representations, the *Ellis* plaintiffs never sought to intervene in this matter. For instance, LP stated to this Court, *inter alia*:

- "Plaintiffs' only possible remedy against LP is a claim for breach of warranty, which plaintiffs have brought as part of a separate, purported class action." (App. p. 3337).

- "LP's warranty actually <u>extends</u> LP's liability. LP's 10-year warranty extends a remedy to many property owners (including the class representatives in the pending Eastern District class action) whose claims would be barred by the 6 year statute of repose but for the express warranty." (emphasis in original) (App. p. 3337).

- "Plaintiffs are already litigating the conscionability of the warranty in a separate lawsuit." (App. p. 3337).

- "The Plaintiffs are members of the Hart class, and are thus prosecuting an express warranty claim against LP. There is no reason for the District Court to entertain a declaratory version of the same claim. The District Court properly deferred to the Hart court in declining jurisdiction over the declaratory judgment claim." (App. p. 3338).

- "***They have asserted a warranty claim against LP through the Hart class action***." (App. p. 3338) (emphasis added).

- "The Plaintiffs' membership in the Hart class ***conclusively and admittedly*** establishes that a contract remedy is available to them." (App. p. 3338) (emphasis added).

Based upon LP's representations, this Court previously stated, "Clearly, here, Appellants do have a contractual basis for recovery in warranty, which they are, in fact, actively pursuing in the *Hart* action." (App. p. 3339), *Ellis v. Louisiana-Pac. Corp.,* 699 F.3d 778, 786 (4th Cir. 2012). Since judicial estoppel precludes LP from now taking an inconsistent position (*See Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir.2007)), the Plaintiffs should be allowed the opportunity to substitute new class representatives who are not affected by the statute of repose and who LP previously told this Court were part of the certified class action.

## III.    The District Court Erred in Dismissing Appellants' Claims on the Basis of *Christie*.

### a.    The *Christie* Decision Is Inapplicable To This Case.

The *Christie* decision is inapplicable to the case before this Court because, unlike the warranty at issue in *Christie*, the LP's Trimboard warranty provided not only a time limit that extended beyond the statute of repose, but specifically offered monetary compensation as the remedy for aggrieved homeowners. Pursuant to LP's Warranty as originally written, LP "*will replace the defective trim on the following basis: ABTco will compensate the owner for repair and*

33

replacement of the affected trim no more than twice the original purchase price of the affected trim homeowners. . ." LP Warranty, *supra* (emphasis added). Thus, homeowners who file claims under LP's claims procedure were entitled to receive monetary compensation "for repair and replacement of the affected trim no more than twice the purchase price of the affected trim." *Id*.   Such monetary compensation contained within the warranty itself is not "damages" awarded by the court within the meaning of the statute of repose. Judge Boyle has recognized as much:

> Through this action, plaintiffs seek only a reformation of LP's Trimboard warranty; plaintiffs have alleged no causes of action sounding in tort that would necessarily require the Court to consider issues related to each class members' causation and damages.

March 29, 2013 Order denying decertification and partial summary judgment (App. p. 2695), at 3.  The holding in *Christie* that a claimant under a warranty who files after the statute of repose has expired cannot recover "damages" and is limited to only the remedy of specific performance simply does not apply.[3]

In *Christie*, the plaintiffs brought suit because the defendant GrailCoat's exterior finish system allowed water to leak into plaintiffs' home causing damage to the walls and compromising the structural integrity of the home. The warranties

---

[3] The relief sought by Appellants is in reality more akin to specific performance than damages.  Appellants seek no more than reformation of the warranty.  LP will remain responsible for processing warranty claims according to its claims procedure under the reformed warranty.

34

at issue were materials on GrailCoat's website that "fully guaranteed" the system for 20 years, but, unlike the warranties at issue before this Court, did not specifically offer monetary compensation. The *Christie* court held only that plaintiffs had no cause of action for *damages*, based on an earlier case that held a plaintiff could only bring suit for specific performance, *Roemer v. Preferred Roofing*, 190 N.C. App. 813, 660 S.E.2d 920 (2008). The *Christie* court clearly did *not* hold that a plaintiff had no action *without regard* to the nature of the remedy provided in the warranty.  In the case before this Court, the relief sought by the Appellants is reformation of the warranty with an order to LP to process all claims in accordance with the reformed warranty.  Initially, the Court, at pages 8-9 of its July 18 Order, had weighed the issue of damages against the common issues it had previously identified, and found that the common issues predominated.  Plaintiffs' Trial Plan, however, called for consumer compensation to be determined pursuant to a reformed LP Warranty. (App. pp. 2937-2944).  Therefore, the Court would not be called upon to make "damages" determinations at all.   Accordingly, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party, *Garofolo*, 405 F.3d  at 198-99,  this Court should find that Plaintiffs are not seeking "damages" as that term is used in *Christie.*

### b. *Christie* Was Wrongfully Decided.

In dismissing the Christies' express warranty claim against GrailCoat, the majority held that *Roemer v. Preferred Roofing*, 660 S.E.2d 920 (N.C. App. 2008) was "instructive", and held "a plaintiff whose action is not filed within the time set forth in the statute of repose has no cause of action for damages" and the sole remedy lies in "specific performance." *Christie v. Hartley Const., Inc.*,745 S.E.2d 60, 63 (N.C. App. 2013). Despite agreements and/or consideration exchanged between the parties, the majority's reliance upon *Roemer* essentially broadened *Roemer's* narrow holding, effectively rewriting all contracts and warranties which extend beyond the statute of repose.[4]

In *Roemer*, a contractor, not a manufacturer, installed a roof in a defective manner. *Id.* at 921. The contractor provided a lifetime warranty regarding the roof's installation. *Id.* No other details were provided. *Id.* The homeowner filed a lawsuit against the roofer eight (8) years after the roof was installed, asserting breach of express warranty. *Id.* On appeal, the court upheld dismissal of the homeowner's claim because the owner's remedy lay in money damages; the court failed to address whether the contract was limited to specific performance rather than money damages. *Id.* at 923.

---

[4] For example, Judge Boyle's view of *Christie* would essentially void LP's 30-year warranty on Smartside and, indeed, any manufacturer's warranty on a building product that extended beyond 6 years.

Judge Boyle, in his November 19, 2009 Order declining to dismiss this case on the basis of the statute of repose, stated, "*Roemer* is more properly read as holding that the remedy for breach of express warranty may be limited to specific performance *if the express warranty so provides and the statute of repose has expired.*" (App. pp. 174-177) (emphasis added). In his dissent in *Christie*, Judge Hunter observed: "[*Roemer*] did not state the terms of the warranty and did not provide reasoning for why specific performance would be the sole remedy under those terms, so I would presume that the warranty in that case required specific performance." *Christie*, 745 S.E.2d 60, 64 (2013) (dissent). Judge Hunter further agreed that *Roemer* is a case of "poor pleading" and would "hold that a full warranty which exceeds the time period for the statute of repose is a waiver of the statute for all claims," but if the contract between the parties limits the remedies, then claims would be limited to "specific contractual relief as in *Roemer*." *Id*.

In fact, as predicted by Judge Boyle and Judge Hunter's dissent, a review of the official *Roemer* record on appeal reveals that the contractual relief lay only in specific performance, because the contract at issue actually provided a "lifetime *labor* guarantee." (emphasis added). Thus, the *Roemer* plaintiff was limited in seeking only specific performance of roof repair rather than money damages because that is what the warranty provided. Here, the LP warranty specifically provides for monetary compensation as its remedy. Unlike *Roemer* and *Christie*,

LP has also stated "Plaintiff devotes over four (4) pages of her Response (DE #31, p. 5-8, 11-12) to a proposition with which LP does not disagree-that the statute of repose ***does not bar*** plaintiff's claim under the ten (10) year express written warranty ("express written warranty")."  (App. pp. 135-136) (emphasis added).

### c.  The Purpose of the Statute of Repose is not Advanced by Barring Claims Under Warranties that Extend Beyond the Statute.

Since LP's warranty provided for monetary compensation over a 10-year period, the purpose of the statute of repose is not advanced by barring Appellants' right to reformation of the warranty and an award of appropriate compensation through LP's claims process. The purpose of a statute of repose is to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed period. *Colony Hill Condominium I Assoc. v. Colony Co.*, 320 S.E.2d 273, 276 (N.C. App. 1984), *disc. rev. denied*, 325 S.E.2d 485 (N.C. 1985).

In upholding the constitutionality of the statute of repose, the North Carolina Supreme Court held that the statute was designed to limit the liability of architects, contractors, and others in the construction industry for improvements made to real property. *Lamb v. Wedgewood S. Corp.*, 427-28, 302 S.E.2d 868, 873 (N.C. 1983). In *Lamb*, the North Carolina Supreme Court discussed the applicability of the statute of repose:

> In the late 1950's and early 1960's, many architects and contractors felt threatened by the abolition of the privity requirement and the advent of 'discovery' provisions in *tort*

statutes of limitation. In response, various architects' and contractors' trade associations sponsored legislation to curtail the time period during which an architect or contractor might be held liable for a *negligent* act.

*Id*. (emphasis added).

In *Tetterton v. Long Manufacturing Co.*, 332 S.E.2d 67, 73-74 (N.C. 1985), the Supreme Court also discussed that the purpose of the products liability statute of repose was to provide protection to manufacturers and sellers from claims after a certain period of time:

> Proponents of statutes of repose contend that the most significant problem for industry in product liability actions is the long 'tail' or period of potential liability, facing manufacturers and sellers of products. Permitting a person to bring a product liability action within an indefinite period of time after the product reaches the stream of commerce subjects the *seller or manufacturer* to potential liability for an unlimited time after *his* contact with the product has ended. Manufacturers favor statutes of repose because they eliminate the 'tail' problems of older products.

> \* \* \*

> Thus, the obvious intent of the legislature in cases like the present one was to limit Long's, the manufacturer's, liability after a certain period of years had elapsed from the date of initial purchase for use or consumption.

> \* \* \*

> The advantages of the statute of repose are that they "(1) establish an actuarially certain date after which no liability can be assessed; and (2) eliminate tenuous claims involving older products for which evidence of defective conditions may be difficult to produce."

*Id*. 332 S.E.2d at 73-74 (internal quotations and citation omitted).

Thus, the legislative purpose of the statute of repose was to protect construction personnel from *stale negligence claims* or to limit the manufacturer's liability after a certain period of years had elapsed. The majority's opinion in *Christie* is inconsistent with barring an action in which a manufacturer/supplier specifically guaranteed that it will perform for a specified period of time.[5] The North Carolina Supreme Court will likely address this issue in the spring/summer of 2014.

## CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the Eastern District of North Carolina dismissing this action and decertifying the class should be reversed and the case remanded for further proceedings.

Respectfully submitted,

This the 18th day of February, 2014.

/s/ Daniel K. Bryson
Daniel K. Bryson
Scott C. Harris
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Tel.: (919) 600-5003
Fax: (919) 600-5035
Email: dan@wbmllp.com

---

[5] Indeed, as Judge Hunter's dissent in *Christie* suggests, LP waived the statute of repose as a defense to any claims by providing that its warranty period extended beyond that statutory deadline.

40

Gary E. Mason
Nicholas A. Migliaccio
Charles A. Schneider
Martha B. Schneider
Whitfield, Bryson & Mason, LLP
1625 Massachusetts Avenue, NW
Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294
Email: nmigliaccio@wbmllp.com

Joel R. Rhine
Jean S. Martin
Rhine Martin Law Firm, P.C.
314 Walnut Street
Wilmington, NC 28401
Tel: (910) 772-9960
Fax: (910) 772-9062
Email: jrr@rhinelawfirm.com

Auley M. Crouch, III
Christopher K. Behm
Block, Crouch, Keeter, Behm & Sayed, LLP
PO Box 4
Wilmington, NC 28402
Tel: (910) 763-2727
Fax: (910) 762-6429
Email: cbehm@bcklawfirm.com

ATTORNEYS FOR PLAINTIFFS/APPELLANTS

41

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9432 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in font size 14 and Times New Roman.

This 18th day of February, 2013.

/s/  Daniel K. Bryson
Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Tel.: (919) 600-5003
Fax: (919) 600-5035
Email: dan@wbmllp.com

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel K. Bryson, certify that on February 18, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


 /s/  Daniel K. Bryson                        February 18, 2014         
Daniel K. Bryson                                   Date

43