**RECORD NO. 13-2375**

In The

# United States Court Of Appeals For The Fourth Circuit

## GWEN HART, on behalf of herself and all others similarly situated; LUCILLE DRUTHER; JOSEPH DRUTHER; EDWARD WUELLNER; JENNIFER WUELLNER,

*Plaintiffs – Appellants,*

v.

## LOUISIANA-PACIFIC CORPORATION,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT ELIZABETH CITY

—————————

**BRIEF OF APPELLEE**

—————————

**Richard T. Boyette**
**Meghan N. Knight**
**CRANFILL SUMNER & HARTZOG, LLP**
**P.O. Box 27808**
**Raleigh, NC  27611-7808**
**(919) 828-5100**

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2375__     Caption: __Gwen Hart, et al. v. Louisiana-Pacific Corporation__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Louisiana-Pacific Corporation__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.  Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Richard T. Boyette _____    Date: _____11/22/2013_____

Counsel for: Louisiana Pacific Corporation _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____11/22/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached.

/s/ Richard T. Boyette _____          _____11/22/2013_____
        (signature)                                          (date)

- 2 -

I hereby certify that on November 22, 2013, I electronically filed the foregoing pleading, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following parties to this action or their attorneys of record:

Daniel K. Bryson, Esq.
Scott C. Harris, Esq.
Whitfield Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
dan@wbmllp.com
scott@wbmllp.com

Gary E. Mason, Esq.
Nicholas A. Migliaccio, Esq.
Charles A. Schneider, Esq.
Martha B. Schneider, Esq.
Whitfield Bryson & Mason, LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, DC 20036
gmason@wbmllp.com
nmigliaccio@wbmllp.com
cschneider@wbmllp.com
caslawdc@msn.com

Charles J. LaDuca, Esq.
Michael J. Flannery, Esq.
Cuneo Gilbert and LaDuca, LLP
300 North Tucker Blvd., Suite 801
St. Louis, MO 63101
charles@cuneolaw.com
*Attorneys for Plaintiffs*

Auley M. Crouch, III, Esq.
Christopher K. Behm, Esq.
Block Crouch Keeter Behm & Sayed, LLP
P.O. Box 4
Wilmington, NC 28402
acrouch@bcklawfirm.com
cbehm@bcklawfirm.com

Joel R. Rhine, Esq.
Rhine Martin Law Firm, PC
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
jrr@rhinelawfirm.com

Jordan L. Chaikin, Esq.
Parker Waichman LLP
3301 Bonita Beach Rd., Suite 101
Bonita Springs, FL 34134
jchaikin@yourlawyer.com

/s/ Richard T. Boyette
Richard T. Boyette, NC Bar No. 7623
Meghan N. Knight, NC Bar No. 35384
Cranfill Sumner & Hartzog, LLP
P.O. Box 27808
Raleigh, NC 27611-7808
Tel: (919) 828-5100
Fax: (919) 863-3519
rtb@cshlaw.com

*Attorney for Defendant Louisiana-Pacific Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE ISSUES PRESENTED ........................................1

STATEMENT OF THE CASE AND RELEVANT FACTS ....................1

SUMMARY OF THE ARGUMENT .....................................................8

ARGUMENT ........................................................................................9

I.    The District Court correctly granted summary judgment where Plaintiffs' claim for breach of express warranty, which seeks damages beyond the remedy provided in the warranty, was filed subsequent to the expiration of the statute of repose ...........................9

    A.    Standard of Review..................................................9

    B.    Argument ...............................................................10

        1.    The District Court properly granted summary judgment to LP ........................................10

        2.    This Court should reject Plaintiffs' efforts to re-characterize the remedy they seek as "akin" to specific performance.....................................20

II.    The District Court did not abuse its discretion in decertifying the class where a multitude of necessary individualized determinations destroy typicality, predominance, and otherwise foreclose class certification ...............................................26

    A.    Standard of Review................................................26

    B.    Argument ...............................................................27

       1.     The claims of the class fell with the claims of the named Plaintiffs .............................................................27

       2.     The District Court did not abuse its discretion in decertifying the class .....................................................29

III.    Plaintiffs' appeal of an issue, raised for the first time in Plaintiffs' motion to reconsider in the District Court, should be dismissed for lack of jurisdiction where Plaintiffs have not filed a timely notice of appeal from the order denying that motion. In the alternative, the District Court did not abuse its discretion in denying Plaintiffs' request to substitute new class representatives where the District Court already ruled that class certification was inappropriate based upon the predominance of individualized issues...........................................................35

      A.    This Court does not have jurisdiction to decide whether the District Court correctly denied Plaintiffs' request to substitute new class representatives, as Plaintiffs did not file a timely notice of appeal from the order denying that motion .....................................................................35

      B.    In the alternative, the District Court did not abuse its discretion denying Plaintiffs' request to substitute new class representatives................................................36

       1.     Plaintiffs' request that they be allowed to substitute new class members – first made after summary judgment had been granted and after the class had been decertified – came too late.....................36

       2.     Even had a timely request to substitute been made, the circumstances of this case do not warrant substitution..................................................................38

       3.     Judicial estoppel is inapplicable to this case .................41

CONCLUSION ....................................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Albano v. Shea Homes Ltd. P'ship,
  227 Ariz. 121, 254 P.3d 360 (2011) ...........................................................31

American Pipe & Construction Co. v. Utah,
  414 U.S. 538 (1974)...................................................................................31

Ashcroft v. Mattis,
  431 U.S. 171 (1977)....................................................................................16

Brown v. Nucor Corp.,
  576 F.3d 149 (4th Cir. 2009) .......................................................................27

Blum v. Yaetsky,
  457 U.S. 991 (1982)................................................................................ 27-28

Broussard v. Meineke,
  155 F.3d 331 (4th Cir. 1998) ........................................................................28

Cacha v. Montaco, Inc.,
  147 N.C. App. 21, 554 S.E.2d 388 (2001) .......................................14, 15, 31

Cavenaugh v. Cavenaugh,
  317 N.C. 652, 347 S.E.2d 19 (1986) ............................................................24

Christie v. Hartley Construction, Inc.,
  __ N.C. App. __, 745 S.E.2d 60 (2013), review allowed,
  752 S.E.2d 146 (2013)..........................................................................passim

Coffman v. Breeze Corps.,
  323 U.S. 316 (1945)....................................................................................16

Comm'r v. Estate of Bosch,
  387 U.S. 456 (1967)....................................................................................12

Cox v. Babcock & Wilcox Co.,
    471 F.2d 13 (4th Cir. 1972) ..........................................................................40

Dameron v. Sinai Hosp. of Baltimore, Inc.,
    595 F. Supp. 1404 (D. Md. 1984)..............................................................40

Drewitt v. Pratt,
    999 F.2d 774 (4th Cir. 1994) ........................................................................9

E. Tex. Motor Freight Sys., Inc. v. Rodriguez,
    431 U.S. 395 (1977)......................................................................................27

Elezovic v. England,
    200 F. App'x 193 (4th Cir. 2006)................................................................35

Ellis v. Louisiana-Pacific Corp.,
    699 F.3d 778 (4th Cir. 2012) ..........................................................41, 42, 43

Forsyth Mem. Hosp. v. Armstrong World Indus., Inc.,
    336 N.C. 438, 444 S.E.2d 423 (1994) ........................................................14

Gen. Tel. Co. of Sw. v. Falcon,
    457 U.S. 147 (1982)......................................................................................27

Goodman v. Schlesinger,
    584 F.2d 1325 (4th Cir. 1978) ...............................................................39, 40

Gunnells v. Health Plan Svcs., Inc.,
    348 F.3d 417 (4th Cir. 2003) ...............................................27, 29, 32, 33

Harbison v. Louisiana-Pacific Corp.,
    2:13-cv-00814-AJS, 2014 WL 469936 (W.D. Pa. Feb. 6, 2014)......20, 24, 25

Harris v. Harris,
    307 N.C. 684, 300 S.E.2d 369 (1983) ........................................................24

Harris v. Upham,
    244 N.C. 477, 94 S.E.2d 370 (1956) ..........................................................21

Hart v. Louisiana-Pacific Corp.,
    No. 2:08-cv-47-BO (E.D.N.C. Nov. 21, 2008) ............................5, 42, 43, 44

Henderson v. Park Homes, Inc.,
    147 N.C. App. 500, 555 S.E.2d 926 (2001) ...........................................30, 31

Higgins v. E. I. Dupont de Nemours & Co.,
    863 F.2d 1162 (4th Cir. 1988) .......................................................................9

Hutchins v. Honeycutt,
    286 N.C. 314, 210 S.E.2d 254 (1974) ..........................................................24

Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.,
    659 F.2d 1259 (4th Cir. 1981) ................................................................39, 40

Jones v. Saxon Mortg., Inc.,
    537 F.3d 320 (4th Cir. 1998) .......................................................................30

Kniep v. Templeton,
    185 N.C. App. 622, 649 S.E.2d 425 (2007) ...........................................21, 22

Kremens v. Bartley,
    431 U.S. 119 (1977)......................................................................................38

In re: Lehman Bros. Sec. & ERISA Litig.,
    800 F. Supp. 2d 477 (S.D.N.Y. 2011) ..........................................................31

McKinnon v. CV Indus., Inc.,
    213 N.C. App. 328, 713 S.E.2d 495 (2011) .................................................21

McLean v. Keith,
    236 N.C. 59, 72 S.E.2d 44 (1952) .........................................................21, 22

Monson v. Paramount Homes, Inc.,
    133 N.C. App. 235, 515 S.E.2d 445 (1999) .................................................31

O'Shea v. Littleton,
    414 U.S. 488 (1974).................................................................................16, 28

Potter v. Potter,
    199 F.R.D. 550 (D. Md. 2001) .................................................... 37

Rape v. Lyerly,
    287 N.C. 601, 215 S.E.2d 737 (1975) ......................................... 21

Reynolds v. Sheet Metal Workers, Local 102,
    702 F.2d 221 (D.C. Cir. 1981) .................................................... 40

Robinson v. Metro-North Commuter R.R. Co.,
    267 F.3d 147 (2d Cir. 2001) ....................................................... 40

Roemer v. Preferred Roofing, Inc.,
    190 N.C. App. 813, 660 S.E.2d 920 (2008) ........................... passim

Sprague v. Gen. Motors Corp.,
    133 F.3d 388 (6th Cir. 1998) ...................................................... 28

Tetterton v. Long Mfg. Co.,
    314 N.C. 44, 332 S.E.2d 67 (1985) ............................................ 26

The Glens of Ironduff Prop. Owners Ass'n, Inc. v. Daly,
    __ N.C. App. __, 735 S.E.2d 445 (2012) .................................... 10

Torres v. Oakland Scavenger Co.,
    487 U.S. 312 (1988) ................................................................... 35

Vaughns v. Bd. of Educ.,
    574 F. Supp. 1280 (D. Md. 1983) ............................................... 39

Ward v. Dixie Nat'l Life Ins. Co.,
    595 F.3d 164 (4th Cir. 2010) ................................................. 27, 29

West v. Am. Tel. & Tel. Co.,
    311 U.S. 223 (1940) ................................................................... 12

Whittaker v. Todd,
    176 N.C. App. 185, 625 S.E.2d 860 (2006) ................................ 30

vii

Williams v. Habul,
    __ N.C. App. __, 724 S.E.2d 104 (2012) ...............................................21, 22

Wiseman v. First Citizens Bank & Trust Co.,
    215 F.R.D. 507 (W.D.N.C. 2003)................................................................37

Zinkand v. Brown,
    478 F.3d 634 (4th Cir. 2007) ......................................................................41

**Statutes**

N.C.G.S. § 1-50(a)(5)............................................................................................29

N.C.G.S. § 1-50(a)(6)....................................................................................10, 14

**Rules**

Fed. R. App. P. 3(c) ..............................................................................................35

Fed. R. App. P. 3(c)(1)(B) ....................................................................................35

Fed. R. App. P. 4(1)(A).........................................................................................35

Fed. R. App. P. 26(b)(1) .......................................................................................35

Fed. R. Civ. P. 23 ..................................................................................................34

Fed. R. Civ. P. 23(b).............................................................................................40

Fed. R. Civ. P. 23(b)(2).........................................................................................40

Fed. R. Civ. P. 23(b)(3)....................................................................................29, 40

Fed. R. Civ. P. 23(c)(1)(3) ....................................................................................29

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................27

Fed. R. Civ. P. 56(a)...............................................................................................9

Fed. R. Civ. P. 60(b) ........................................................35, 36

Fed. R. Civ. P. 60(b)(6).........................................................38

## **Other Authority**

Hutson, John N. and Scott A. Miskimon,
   North Carolina Contract Law (2001) ....................................11, 30

## STATEMENT OF THE ISSUES[1] PRESENTED

1.    Whether the District Court correctly granted Defendant-Appellee Louisiana-Pacific Corporation's ("LP") Motion for Summary Judgment where Plaintiffs' claim for breach of express warranty, which seeks damages beyond the remedy provided for in the applicable warranty, was filed after the expiration of the statute of repose.

2.    Whether the District Court's decision to decertify the class was an abuse of discretion where a multitude of necessary individualized determinations destroy typicality, predominance, and otherwise foreclose class certification.

3.    Whether Plaintiffs' appeal of an issue, raised for the first time in Plaintiffs' motion to reconsider in the District Court, should be dismissed for lack of jurisdiction where Plaintiffs have not filed a timely notice of appeal from the order denying that motion.  In the alternative, whether the District Court abused its discretion denying Plaintiffs' request to substitute new class representatives where the District Court already ruled that class certification was inappropriate based upon the predominance of individualized issues.

## STATEMENT OF THE CASE AND RELEVANT FACTS

Plaintiff Gwen Hart filed this putative class action on October 22, 2008, in Dare County Superior Court.  (JA 43-61; DE 1-2.)  On November 21, 2008, LP

---

[1] To promote logical flow of LP's arguments herein, LP has organized and stated the issues differently than Plaintiffs have done.

removed the case to the Eastern District of North Carolina. (JA 38; DE 1.) Plaintiff Hart, along with Plaintiffs Wuellners and Druthers, filed an amended complaint on September 21, 2009. (JA 141-159; DE 41.) The claims against LP sought damages for breach of an express limited written warranty. For example, in their amended complaint, Plaintiffs allege the following:

- "As a result of the defects in the trimboard, Plaintiffs and the Class have suffered damages, in that the trimboard has been installed on their homes or offices, either by them or by contractors, that they would not otherwise have wanted had they known of the defect." (JA 141-59; DE 41, at ¶ 7.)

- "These common legal and factual issues include the following: . . . Whether Plaintiffs and the Proposed Class are entitled to compensatory damages . . . ." (Id. at ¶ 34(g).)

- "The limitations of damages contained in the express warranty provisions are harsh, oppressive and one-sided. The limitations related to the amount of damages . . . are unconscionable . . . ." (Id. at ¶ 48.)

- "As a result of the foregoing, Plaintiffs and the members of the Proposed Class have suffered damages (in the form of, inter alia, out-of-pocket expenditures for replacement trimboard and/or installation of replacement trimboard) . . . ." (Id. at ¶ 65.)

- "Plaintiffs and members of the Proposed Class have incurred damages in an amount in excess of $10,000, to be established according to proof." (Id. at ¶ 66.)

- "Because [LP's] warranty provides that monetary damages are the sole available remedy, it therefore should be ordered, under the doctrine of specific performance, to honor the terms of its warranty." (Id. at ¶ 71.)

- "WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, pray for a judgment against Defendant as

follows: . . . For compensatory damages sustained by Plaintiffs and the Proposed Class . . . ." (<u>Id.</u> at p. 16.)[2]

The warranty was provided as part of the sale of LP's TrimBoard, a wood exterior trim product manufactured by LP. (<u>See generally id.</u>) The limited express warranty provides:

> Louisiana-Pacific Corporation (LP) warrants to the original purchaser and to any subsequent owner of a structure on which its LP ABT Trimboard (the Product) is installed, that the Product substrate will not delaminate, check, split, crack, or chip for a period of ten years from the date of installation under normal conditions of use and exposure, provided the trim is properly stored, installed, maintained, and protected as specified in the LP ABT Trimboard application instructions.

> The sole remedy for breach of this warranty shall be that, after investigation and verification, LP will pay an amount equal to the cost (as established by an independent construction cost estimator such as R.S. Means) of replacing any such failed Product if failure occurs within ten years after the product was installed.

> . . .

> NOTICE: THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THESE WARRANTIES ARE EFFECTIVE ONLY IF THE PRODUCT IS PROPERLY INSTALLED IN ACCORDANCE WITH THE LP ABT TRIMBOARD APPLICATION INSTRUCTIONS.

---

[2] Taking the Plaintiffs' allegations at face value, the District Court, in denying LP's Motion for Judgment on the Pleadings, observed: "And the complaint seeks damages for—actual damages for the damage to the house and the loss of value . . . ." (JA 1198; DE 122, at 6:8 to 6:10.)

3

ANY WARRANTY CLAIMS BASED UPON THIS WARRANTY MUST BE MADE IN WRITING WITHIN THE APPLICABLE WARRANTY PERIOD. LP MUST BE GIVEN A REASONABLE OPPORTUNITY TO INVESTIGATE THE CLAIMED DEFECTS. IN ANY EVENT, LP'S LIABILITY SHALL BE LIMITED TO THE REMEDIES SET FORTH ABOVE, AND LP SHALL NOT BE LIABLE FOR OTHER DAMAGES OR LOSSES, INCLUDING BUT NOT LIMITED TO INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, AND CONSEQUENTIAL DAMAGES. THE REMEDIES SET FORTH ABOVE ARE THE PURCHASER'S EXCLUSIVE REMEDIES.

. . .

LP SHALL NOT BE LIABLE FOR DAMAGE OR DEFECTS RESULTING FROM CIRCUMSTANCES BEYOND LP'S CONTROL, INCLUDING BUT NOT LIMITED TO USE OF THE PRODUCT FOR PURPOSES OTHER THAN THAT FOR WHICH IT WAS DESIGNED, FAILURE TO FOLLOW INSTALLATION INSTRUCTIONS, FAILURE TO PROVIDE REASONABLE AND NECESSARY MAINTENANCE, ACTS OF GOD, FIRE, OR CASUALTY, AND ANY OTHER MISUSE BY THE PURCHASE[R] OR OTHER PARTIES.

(JA 159; DE 41-2.)

Plaintiffs moved for class certification on November 5, 2010. (JA 178-182; DE 73.) On July 8, 2011, the District Court granted Plaintiffs' motion for class certification. (See JA 1027-1036; DE 100.) The District Court certified the following class:

All persons in the State of North Carolina who own a home, office or other building in which [LP's] TrimBoard has been installed in the past ten years.

Id.

4

In July 2012, notice was given to the <u>Hart</u> class that claims with respect to LP's express written warranty would be determined in this action. (<u>See</u> JA 3213; DE 137; 138.) The notice made clear this action was certified as a <u>damages</u> class per Plaintiffs' request, as reflected in the approved and published Notice of Class Action, which explains that "[t]his Court ruled on July 15, 2011 that this lawsuit may be maintained as a claim for <u>damages</u>, interest and costs on behalf of a class consisting of all persons in the State of North Carolina who own a home, office or other building in which LP's TrimBoard has been installed since October 22, 1998."[3] (*See* JA 3213; DE 137, Ex. 4, at 2 (emphasis added).) The Notice likewise states that, "[b]y remaining a class member, any claims you have for <u>damages</u> or other relief against LP relating to its express warranty, and the limitations of liability in LP's warranty which Plaintiffs claim are not enforceable as asserted in this lawsuit, will be determined in this case and cannot be presented in any other proceeding or lawsuit." (DE 137, Ex. 4, at 3 (emphasis added).)

---

[3] The Notice likewise states that, "[b]y remaining a class member, any claims you have for <u>damages</u> or other relief against LP relating to its express warranty, and the limitations of liability in LP's warranty which Plaintiffs claim are not enforceable as asserted in this lawsuit, will be determined in this case and cannot be presented in any other proceeding or lawsuit." (DE 137, Ex. 4, at 3 (emphasis added).)

The Pretrial Order, approved by the Court on June 21, 2013, includes the following stipulations of fact[4]:

- "Plaintiff Gwen Hart ('Hart') is the owner of a home in Nags Head, North Carolina, built in 1999, which had LP TrimBoard on its exterior."

- "Joseph and Lucille Druther ('Druthers') own a home in Apex, North Carolina, built in July, 2000, with TrimBoard on its exterior."

- "Plaintiffs Edward and Jennifer Wuellner ('Wuellner' or 'Wuellners') also own a home in Apex, North Carolina, built in 2001 with LP TrimBoard on its exterior."

(See JA 2946-3053; DE 201 at 7, 8.)

There is no question that this suit was filed beyond the six-year statute of repose applicable to the claims of the named Plaintiffs. (See, e.g., JA 3244-3248; DE 216 at p. 3; JA 3295 -3316; DE 223-1 at pp. 7-8, n. 1.) LP has argued from the start of this case that the six-year statute of repose bars Plaintiffs from recovering damages for breach of express warranty. (See generally JA 88-86; DE 24, at pp. 3-7.)

---

[4] In their *Statement of the Facts* (see Pls.-Appellants' Br. at pp. 10-17), Plaintiffs reiterate a number of the allegations from their amended complaint that have no bearing on the resolution of this appeal of an order granting summary judgment to LP and decertifying the class.

Plaintiffs repeatedly have made clear -- even as recently as on the eve of trial -- that the only recovery that they seek from LP is <u>damages</u> for breach of express warranty, stating in their proposed trial plan: "*Phase Three: Class Representative Damage Awards*. If the Court reforms the express warranty, Plaintiffs will seek to impanel a jury <u>for the purposes of awarding damages</u> to the named class representatives under the reformed express warranty." (<u>See</u> JA 2950; DE 201 at 5 (emphasis added).)

On July 19, 2013, three days after <u>Christie v. Hartley Construction, Inc.</u>, __ N.C. App. __, 745 S.E.2d 60 (2013), was decided, LP filed a Motion for Summary Judgment (JA 3155-60; DE 208) and supporting memorandum (JA 3161-69; DE 209), demonstrating that the class representatives' claims were barred by the statute of repose and that the class should be decertified. Plaintiffs opposed this motion. On September 3, 2013, the District Court granted LP's motion for summary judgment and decertified the class.[5] (<u>See</u> JA 1037-1040; DE 216.) On September 27, 2013, Plaintiffs filed a timely notice of appeal as to the September 3, 2013 Order. (<u>See</u> JA 3274; DE 221.) Plaintiffs then filed a motion seeking

---

[5] Plaintiffs describe the District Court's September 3, 2013, decision as "granting Appellee's Motion for Reconsideration of the Court's Order Denying Partial Summary Judgment and Declining to Decertify the Class." (Pls-Appellants' Br. at pp. 2-3.) This is inaccurate. The District Court granted LP's summary judgment motion, agreed the class should be decertified, and then declared other motions moot. (<u>See</u> JA 1037-1040; DE 216.) The District Court did not grant reconsideration of its prior order denying LP's prior motion for partial summary judgment and LP's prior motion to decertify the class.

relief from/reconsideration of the District Court's order (JA 3251; DE 219), which was denied on November 12, 2013. (JA 3531-33; DE 230.)

## SUMMARY OF THE ARGUMENT

The sole claim brought by Plaintiffs in this case is for breach of express warranty. For the entirety of this lawsuit, Plaintiffs have sought damages beyond the contractual remedy provided in LP's express limited warranty. The District Court correctly granted summary judgment to LP, recognizing that Plaintiffs' claims should be dismissed because they are pursuing damages outside the repose period for their alleged breach of warranty claim.[6] The District Court, acting within its discretion, decertified the class, finding individualized inquiries – including the determination that must be made as to whether each unnamed class member's claims are barred by the statute of repose – destroy typicality, predominance, and otherwise preclude class certification. This Court should affirm the District Court's order granting summary judgment to LP and decertifying the class.

Whether the District Court correctly denied Plaintiffs' request to substitute new class members is not properly before this Court, because Plaintiffs did not file a notice of appeal from the order denying that request. In the alternative, the

---

[6] Plaintiffs' other potential claims also would have been barred by the statute of repose. Plaintiffs' effort here to claim damages in addition to the remedy provided in the express warranty sought to avoid the effect of the statute of repose barring such damages claims.

District Court's decision denying the request to substitute should be affirmed, because Plaintiffs raised this issue for the first time in their motion to have the District Court alter or reconsider its order granting summary judgment to LP and decertifying the class, and because the denial of the belated request was not an abuse of discretion in light of the District Court's finding that individual issues predominate.

## ARGUMENT

**I.    The District Court correctly granted summary judgment where Plaintiffs' claim for breach of express warranty, which seeks damages beyond the remedy provided in the warranty, was filed subsequent to the expiration of the statute of repose.**

### A.    Standard of Review

On appeal, a District Court's summary judgment ruling is reviewed de novo. Drewitt v. Pratt, 999 F.2d 774, 778 (4th Cir. 1994); Higgins v. E. I. Dupont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). In this case, the ruling on appeal includes the grant of Defendant's Motion for Summary Judgment.  Rule 56(a) of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Whether a statute of repose has run is a question of law, and summary judgment is proper if the pleadings or proof show without contradiction

that the statute of repose has expired.  The Glens of Ironduff Prop. Owners Ass'n, Inc. v. Daly, __ N.C. App. __, __, 735 S.E.2d 445, 447 (2012).

**B.    Argument**

**1.    The District Court properly granted summary judgment to LP.**

Plaintiffs' complaint can only be read fairly to plead an "action for the recovery of damages for . . . damage to property based upon or arising out of any alleged defect or any failure in relation to a product" within the meaning of the applicable statute of repose.  (See JA 43-57, DE 1-2; JA 141-59, DE 41.)  There is no dispute that Plaintiffs did not initiate this action until 2008, more than six years after TrimBoard was purchased for use on their homes, and outside the statute of repose.  (See generally JA 43; DE 1.)[7]

LP first asserted its contention that the six-year statute of repose barred Plaintiffs from recovering damages for breach of express warranty in this case in its Motion for Judgment on the Pleadings.  (See generally JA 88-96; DE 24 at 3-7.)  On November 19, 2009, the District Court denied that motion, holding that "[a] claim for breach of an express warranty may be brought after the expiration of the six year statute of repose if the express warranty period extends beyond the statute

---

[7] The former Section 1-50(a)(6) of the North Carolina General Statutes, which applies to Plaintiffs' claims in this case, provided that "[n]o action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption."

10

of repose," and that, "[b]ecause the express warranty here provides that damages are the only remedy available, Plaintiff is not limited to specific performance as a remedy for her breach of warranty claims." (See JA 174-77; DE 47 at 3, 4.) In reaching its decision, the District Court relied upon a treatise entitled North Carolina Contract Law, authored by John N. Hutson and Scott A. Miskimon, to distinguish Roemer v. Preferred Roofing, Inc., 190 N.C. App. 813, 660 S.E.2d 920 (2008),[8] the case LP cited for the proposition that a claim for damages for breach of express warranty is barred after the statute of repose has expired. (See JA 174-77; DE 47 at 4.) Rejecting LP's arguments, the Court stated that "Roemer is more properly read as holding that the remedy for breach of express warranty may be limited to specific performance if the remedy so provides and the statute of repose has expired." Id.

Any question regarding the application of the statute of repose to the remedy available under an express warranty was clarified by the July 16, 2013 opinion of the North Carolina Court of Appeals in Christie v. Hartley Construction, Inc., __ N.C. App. __, 745 S.E.2d 60 (2013), review allowed, 752 S.E.2d 146 (2013)

---

[8] The plaintiff-homeowner in Roemer hired defendant to install a new roof on her home. See id. at 813, 660 S.E.2d at 921. She alleged that she discovered defects with the roof several years after the project was completed. Id. Plaintiff sued the defendant approximately seven years after the roof was installed. The North Carolina Court of Appeals held that plaintiff's claim was barred, because plaintiff was seeking damages under a breach of warranty theory after the expiration of the statute of repose period. Id. at 816-17, 660 S.E.2d at 923.

(mem.).[9] In <u>Christie</u>, the court held that a plaintiff whose action is not filed within the time set forth in the statute of repose has no cause of action for damages for breach of express warranty, even where the express warranty provides coverage for a longer period of time, and without regard to the nature of the remedy provided in the warranty. <u>Id.</u> at 63.

In <u>Christie</u>, the plaintiffs alleged that certain coating and waterproofing material, which the defendants expressly warranted to last twenty years or more, had failed due to purported design defects, causing water intrusion affecting their home. <u>Id.</u> at 61. The plaintiffs filed their complaint, in which they sought damages against the defendants in excess of $10,000.00, in October 2011, more than six years after the Certificate of Occupancy for their home was issued in March 2005. <u>Id.</u> at 61-63. The North Carolina Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendants due to expiration of the statute of repose, flatly rejecting the plaintiffs' assertion that the twenty-year

---

[9] This Court should follow <u>Christie</u> in accordance with its duty to predict how the North Carolina Supreme Court would decide the issue, utilizing intermediate appellate court decisions as persuasive authority. <u>See</u> <u>Comm'r v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967) (explaining that, where no controlling decision by a state's highest court exists, a federal court must apply what it "find[s] to be the state law after giving 'proper regard' to relevant rulings of other courts of the State"); <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.").

express warranty rendered their claims for damages timely.  Id. at 63.  In so doing, the court noted language in Roemer holding that a "[p]laintiff's remedy for breach of an alleged lifetime warranty claim that is 'brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement[,]' lies in specific performance, and not damages."  Id. at 63 (quoting Roemer, 190 N.C. App. at 817, 660 S.E.2d at 923).  Furthermore, as emphasized by the dissenting panel judge,[10]

---

[10] In his dissenting opinion, Judge Robert N. Hunter, Jr., noted:

> Roemer involved the application of a warranty "of the dependability and reliability of the installation of [a] roof."  The opinion did not state the terms of the warranty and did not provide reasoning for why specific performance would be the sole remedy under those terms, so I would presume that the warranty in that case required specific performance.

> The present case involves a "full warranty."  It would be paradoxical that the statute of repose would void all claims where the parties have contractually agreed to a period of remedy that exceeds the statute of repose.  I would limit Roemer to its facts and hold that a full warranty which exceeds the time period for the statute of repose is a waiver of the statute for all claims.  If, however, the contract between the parties limits the remedies in some express fashion, then claims brought beyond the statute of repose would be limited to specific contractual relief as in Roemer.

Christie, 745 S.E.2d at 63-64 (internal citation omitted) (emphasis added).  Thus, even if the North Carolina Supreme Court were to adopt the dissenting opinion in Christie, the outcome in this case would not change.  This case involves a limited warranty, which provides for specific contractual relief.  (See JA 159; DE 41-2.)  There is no "full warranty", which would warrant the product with no remedy limitations.  Plaintiffs have, at all times, sought to recover extra-contractual

13

the majority opinion drew no distinction between express warranties that allow for recovery of damages and those that provide for specific performance as the sole remedy under the warranty.[11]  See generally id. at 63-64.

Thus, based upon the undisputed material facts in this case and the North Carolina Court of Appeals' decision in Christie, the district court properly granted summary judgment to LP because North Carolina law dictates that Plaintiffs may not recover damages for breach of express warranty because their claims were brought outside the six-year statute of repose.

Plaintiffs' homes were built with TrimBoard in 1999, 2000, and 2001 (the latest possible "date[s] of initial purchase for use or consumption" of the TrimBoard), which triggered the running of the statute of repose.[12]  To be entitled

---

damages, and have never sought in this lawsuit the specific contractual relief provided by the limited warranty.  As set forth in this brief, North Carolina law is clear that damages cannot be sought outside the statute of repose period.

[11] The court in Christie plainly rejected the distinction drawn by plaintiffs and the dissenting panel judge between the assumed "repair or replace" warranty in the Roemer case and the damages warranty provided in Christie and by LP here.  See id. at 63-64.  The parties in Christie briefed that issue, including reference to the District Court's November 19, 2009 Order denying LP's Motion for Judgment on the Pleadings and the treatise relied upon in that decision, which the dissenting judge cited with approval.  See generally id.

[12] The statute of repose applicable to a remote manufacturer like LP is the products liability statute of repose, N.C. Gen. Stat. § 1-50(a)(6).  See Cacha v. Montaco, Inc., 147 N.C. App. 21, 23, 554 S.E.2d 388, 390 (2001); see also Forsyth Mem. Hosp. v. Armstrong World Indus., Inc., 336 N.C. 438, 445, 444 S.E.2d 423, 427 (1994).  This statute of repose provides:

14

to pursue damages for breach of express warranty, Plaintiffs were required to bring this action within six years of the initial purchase of TrimBoard for use or consumption, which they failed to do. Therefore, the statute of repose bars Plaintiffs' claims for damages for breach of express warranty – the only claim that Plaintiffs have pursued in this case and that was certified by the District Court for class treatment – regardless of the nature of the remedy set forth in LP's express warranty for TrimBoard. As the North Carolina Court of Appeals observed in Christie, quoting Roemer: "'[I]f the action is not brought within the specified period, the plaintiff literally has *no* cause of action. The harm that has been done is *damnum absque injuria* – a wrong for which the law affords no redress.'" Id. at 63 (quoting Roemer, 190 N.C. App. at 816, 660 S.E.2d at 923). Plaintiffs here simply have no cause of action at all against LP for damages. Plaintiffs' repeated attempts to re-characterize their claims for damages as claims for specific performance in an effort to circumvent the applicable six-year statute of repose should be rejected. In their opposition to LP's motion for summary judgment, Plaintiffs argued: "the obvious nature of the relief sought by Plaintiffs is reformation of the warranty followed by specific performance under the reformed warranty. They are not

---

> No action for the recovery of damages . . . based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Cacha at 23-24, 554 S.E.2d at 390.

seeking 'damages' as that term is used in *Christie*."  (JA 3188; DE 211 at 5.)  They now argue: "The relief sought by Appellants is in reality more akin to specific performance than damages.   Appellants seek no more than reformation of the warranty."  (Pls.-Appellants' Br. at p. 34, n. 3.) [13]

---

[13] In essence, what Plaintiffs request in this case is in the nature of a declaratory judgment establishing as a matter of law that LP's express warranty for TrimBoard is unconscionable and should be reformed, with warranty claims to be processed pursuant to this reformed warranty.  But Plaintiffs' Amended Complaint contains no cause of action for declaratory relief nor is a declaratory judgment requested.  Thus, to the extent that Plaintiffs have requested that the District Court simply declare certain terms and limitations of the express warranty to be unconscionable, such request is inappropriate in the absence of any underlying pleading on the issue.

Even if there were a claim for declaratory relief at issue in this litigation, for the court to determine whether the warranty should be reformed would, at this point, be an impermissible advisory opinion.  See  Coffman v. Breeze Corps., 323 U.S. 316, 324 (1945) (noting that "[t]he declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen"); see also Ashcroft v. Mattis, 431 U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute which 'calls not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'").  Plaintiffs' only substantive claim is for breach of warranty, which, for the reasons set forth herein, is not viable because it is barred by the statute of repose.  Accordingly, Plaintiffs' request that the warranty be reformed is moot in its entirety and Plaintiffs have no standing to pursue a declaratory judgment because Plaintiffs have suffered no cognizable injury and, therefore, there is no actual controversy between the parties.  O'Shea v. Littleton, 414 U.S. 488, 493 (1974) (noting that a plaintiff must have a "personal stake in the outcome" by demonstrating that he or she has sustained an injury that is "both real and immediate, not conjectural or hypothetical.").

Furthermore, Plaintiffs note that the "predicate findings" for reformation involve allegations of LP's production and sale of a defective product despite its knowledge of those defects, and alleged efforts to hide those defects from

Contrary to their efforts to describe it otherwise, Plaintiffs have always sought damages – and only damages.[14]  Plaintiffs reiterated the nature of their damages claim in their Opposition to LP's Motion for Judgment on the Pleadings, in which they contended: "Therefore, the remedies of specific performance and

_____

consumers.  (See Pls.-Appellants' Br. at p. 22.)  Again, however, Plaintiffs have asserted no product defect claim in their complaint because they cannot assert one – any such claim is barred by the statute of repose.  Plaintiffs' only claim is for breach of an express warranty.  Whether a product is defective is not an element of a breach of express warranty claim, and under the circumstances, plaintiffs are not entitled to any declaration or advisory opinion that the warranty should be reformed due to an alleged defect.

[14] For example, in their amended complaint, Plaintiffs allege the following:

- "As a result of the defects in the trimboard, Plaintiffs and the Class have suffered damages, in that the trimboard has been installed on their homes or offices, either by them or by contractors, that they would not otherwise have wanted had they known of the defect."  (JA 141-59; DE 41, at ¶ 7 (emphasis added).)

- "These common legal and factual issues include the following: . . . Whether Plaintiffs and the Proposed Class are entitled to compensatory damages . . . ."  (Id. at ¶ 34(g) (emphasis added).)

- "The limitations of damages contained in the express warranty provisions are harsh, oppressive and one-sided.  The limitations related to the amount of damages . . . are unconscionable . . . ."  (Id. at ¶ 48 (emphasis added).)

- "As a result of the foregoing, Plaintiffs and the members of the Proposed Class have suffered damages (in the form of, inter alia, out-of-pocket expenditures for replacement trimboard and/or installation of replacement trimboard) . . . ."  (Id. at ¶ 65 (emphasis added).)

- "Plaintiffs and members of the Proposed Class have incurred damages in an amount in excess of $10,000, to be established according to proof."  (Id. at ¶ 66 (emphasis added).)

- "Because [LP's] warranty provides that monetary damages are the sole available remedy, it therefore should be ordered, under the doctrine of specific performance, to honor the terms of its warranty."  (Id. at ¶ 71.)

- "WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, pray for a judgment against Defendant as follows: . . . For compensatory damages sustained by Plaintiffs and the Proposed Class . . . ."  (Id. at p. 16 (emphasis added).)

17

monetary damages are clearly distinct and this Court should not order that Plaintiff should have sought specific performance when LP's express warranty provides that monetary damages are the 'sole remedy available.'" (JA 124; DE 31 at 13.) At the hearing on LP's Motion for Judgment on the Pleadings, the District Court recognized: "And the complaint seeks damages for—actual damages for the damage to the house and the loss of value . . . ." (JA 1198; DE 122, at 6:8 to 6:10.)

Reflecting the position Plaintiffs had taken on this issue, in its Order denying LP's Motion for Judgment on the Pleadings, the District Court held that, "[b]ecause the express warranty here provides that damages are the only remedy available, Plaintiff is not limited to specific performance as a remedy for her breach of warranty claims." (JA 177; DE 47 at 4.)

Perhaps most importantly, this action was certified and noticed as a <u>damages</u> class per Plaintiffs' request, as reflected in the approved and published Notice of Class Action, which explains that "[t]his Court ruled on July 15, 2011 that this lawsuit may be maintained as a claim for <u>damages</u>, interest and costs on behalf of a class consisting of all persons in the State of North Carolina who own a home, office or other building in which LP's TrimBoard has been installed since October 22, 1998."[15]   (<u>See</u> JA 3213; DE 137, Ex. 4, at 2 (emphasis added).)

---

[15] The Notice likewise states that, "[b]y remaining a class member, any claims you have for <u>damages</u> or other relief against LP relating to its express warranty, and the limitations of liability in LP's warranty which Plaintiffs claim are not enforceable

Plaintiffs again confirmed their pursuit of damages in their Motion for Approval of Trial Phasing, stating that their "<u>damages</u> would be determined by a jury based on the reformed Warranty" and that, "[i]f the Court reforms the express warranty, the Plaintiffs will seek to impanel a jury for the purposes of awarding <u>damages</u> to the named class representatives under the reformed express warranty." (JA 2937-42; DE 199, at 1, 3 (emphasis added).)

Thus, it is apparent that, from the outset, Plaintiffs have sought to recover damages from LP. Regardless of whether Plaintiffs sought to recover compensatory damages or the monetary remedy set forth in the LP Warranty by way of specific performance, there is no support in <u>Christie</u> for any distinction Plaintiffs seek to draw between the term "damages" as used in <u>Christie</u> and the "damages" referred to by Plaintiffs throughout this litigation. <u>Christie</u> stands for the simple proposition that a plaintiff may not recover damages for breach of express warranty (as Plaintiffs have pursued here) where such claim is brought after expiration of the statute of repose, even where the underlying warranty giving rise to the claim sets forth a longer period of coverage, and without regard to the nature of the remedy provided in the warranty.

---

as asserted in this lawsuit, will be determined in this case and cannot be presented in any other proceeding or lawsuit." (DE 137, Ex. 4, at 3 (emphasis added).)

Accordingly, the six-year statute of repose bars the claims pursued by Plaintiffs in this action under the North Carolina Court of Appeals' decision in <u>Christie</u>.

> **2.     This Court should reject Plaintiffs' efforts to re-characterize the remedy they seek as "akin" to specific performance.**

Plaintiffs now claim they seek only reformation of the warranty, and that the relief they seek is "more akin to specific performance than damages." (Pls.-Appellants' Br. at p. 34, n.1.) Under their new theory, Plaintiffs claim that "the relief sought by Appellants is reformation of the warranty with an order to LP to process all claims in accordance with the reformed warranty." (<u>Id.</u> at p. 35.) Plaintiffs have asked the District Court first to reform the LP Warranty to eliminate certain limitations alleged by Plaintiffs to be unconscionable and then order "specific performance" by LP in accordance with this reformed warranty.[16]

This new theory is nothing more than another attempt by Plaintiffs at an end-run around the statute of repose. This Court should reject Plaintiffs' current effort to backtrack from their consistent litigation strategy simply to salvage claims that

---

[16] Notably, the District Court has never found any portion of LP's express warranty for TrimBoard to be unconscionable. Rather, the District Court merely allowed Plaintiffs the opportunity to develop their case regarding the alleged unconscionability of the warranty's limitations, until it granted LP's Motion for Summary Judgment. As discussed in further detail <u>infra</u>, the district court in <u>Harbison v. Louisiana-Pacific Corp.</u>, 2:13-cv-00814-AJS, 2014 WL 469936 (W.D. Pa. Feb. 6, 2014), twice has rejected as a matter of law the notion that LP's express warranty for TrimBoard is unconscionable.

plainly are barred by the statute of repose, and should recognize that, in reality, what Plaintiffs seek is, and always has been, monetary <u>damages</u>, not specific performance.

Permitting Plaintiffs' theory to proceed would contradict well-established North Carolina law defining the contours of the doctrine of specific performance. Specific performance is an equitable remedy of ancient origin whose sole function is to compel a party to do precisely what he ought to have done without being coerced by the court. <u>Rape v. Lyerly</u>, 287 N.C. 601, 622, 215 S.E.2d 737, 750 (1975); <u>McLean v. Keith</u>, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952); <u>Williams v. Habul</u>, __ N.C. App. __, __, 724 S.E.2d 104, 110 (2012); <u>McKinnon v. CV Indus., Inc.</u>, 213 N.C. App. 328, 333, 713 S.E.2d 495, 500 (2011); <u>Kniep v. Templeton</u>, 185 N.C. App. 622, 631, 649 S.E.2d 425, 432 (2007).  In other words, specific performance is used to compel a party to meet its contractual obligations; it is not used to rewrite a contract or to create new contractual duties. <u>Kniep</u>, 185 N.C. App. at 631, 649 S.E.2d at 432.

Thus, if the language of a contract is clear and free from ambiguity, the courts must enforce the contract as written and cannot, under the guise of interpretation, rewrite the contract or impose terms on the parties not bargained for and found within the contract. <u>See</u> <u>Harris v. Upham</u>, 244 N.C. 477, 478, 94 S.E.2d 370, 372 (1956) ("A decree of specific performance of a contract to convey land

goes no further than to operate on the land and on the parties to the extent necessary to carry out that contract."); <u>McLean</u>, 236 N.C. at 71, 72 S.E.2d at 53 ("Equity can only compel the performance of a contract in the precise terms agreed on.  It cannot make a new or different contract for the parties simply because the one made by the parties proves ineffectual."); <u>Williams</u>, __ N.C. App. at __, 724 S.E.2d at 111 ("An order of specific performance is intended to produce as nearly as is practicable the same effect that the performance due under a contract would have produced.").  In fact, North Carolina's appellate courts have gone so far as to observe that "it is reversible error if the 'trial court's order enforcing the agreement does not accurately reflect the terms to which the parties agreed.'"  <u>Kniep</u>, 185 N.C. App. at 632, 649 S.E.2d at 432.

Accordingly, even if Plaintiffs were actually pursuing specific performance (which they are not and have not)[17] Plaintiffs could not recover more than that

---

[17] Plaintiffs' attempt to recharacterize their claims as akin to specific performance from LP under a reformed warranty further is undermined by the fact that the "Specific Performance" cause of action in their amended complaint states a claim only on behalf of Plaintiff Hart.  Specifically, the only allegations contained in this claim, which were not included in Plaintiff Hart's original complaint, are as follows:

> 67.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth.

> 68.    ABTCO's express warranty specifically provides that <u>Plaintiff's</u> "sole remedy available for breach of this warranty" is for LP to pay an amount equal to the cost of replacing any failed TrimBoard.

which they would be entitled to recover under the express terms and limitations of the LP Warranty, namely, two times the purchase price of covered, non-performing TrimBoard.  (See JA 159; DE 41-2.)  North Carolina law flatly rejects any attempt to impose a burden above and beyond that which appears in the plain language of a contract under the guise of specific performance.  Even had Plaintiffs pursued specific performance, Plaintiffs could not challenge the terms and limitations

---

69.    ABTCO did not offer to pay Plaintiff Hart for 100% of the costs associated with the removal of the defective trimboard and installation of replacement trimboard.

70.    ABTCO's failure to pay for 100% of the costs associated with the removal of the defective trimboard and installation of new, non-defective trimboard constitutes a breach of express warranty.

71.    Because ABTCO's warranty provides that monetary damages are the sole available remedy, it therefore should be ordered, under the doctrine of specific performance, to honor the terms of its warranty.

(JA 141-59; DE 41, at ¶¶ 67-71 (emphasis added).)  There are no allegations providing a basis to award specific performance with regard to the Druthers or Wuellners or the class members.  See generally id.  Thus, even if Plaintiffs were seeking specific performance from LP, such recovery could be had only by Plaintiff Hart (if at all) based on the allegations set forth in the amended complaint, as the Druther and Wuellner Plaintiffs and the Class Members have not asserted claims for specific performance.  Furthermore, because Plaintiff Hart already has replaced every piece of TrimBoard on her home, her only claim would be for damages in the amount of the cost of replacement, rendering specious Plaintiffs' efforts to characterize their specific performance claim as something other than a claim for money damages, and underscoring the individual nature of specific performance that makes that claim inappropriate for class treatment.

23

contained in the LP Warranty as unconscionable or otherwise invalid.[18]  Even the

dissenting judge in Christie recognized this.  Judge Robert N. Hunter, Jr., indicated

he "would hold that a full warranty which exceeds the time period for the statute of

repose is a waiver of the statute [of repose] for all claims.  If, however, the contract

between the parties limits the remedies in some express fashion, then claims

brought beyond the statute of repose would be limited to specific contractual relief

as in *Roemer*."  Christie, 745 S.E.2d at 64.

A federal district court recently rejected a plaintiff's attempt, in a very

similar putative class action brought by some of the class counsel here, to "open

the door to additional damages outside those provided for in the express warranty

under a breach of express warranty theory[.]"  Harbison v. Louisiana-Pacific Corp.,

No. 2:13-cv-00814-AJS, 2014 WL 469936 at *9 (W.D. Pa. Feb. 6, 2014).

> The facts in the Amended Complaint further suggest that Plaintiff
> wants to avail himself of (at a minimum) the 10-year guarantee (and
> possibly other promises made in that express warranty) so that he may
> advance his breach of express warranty claim against Defendant.
> However, it also appears from the face of the Amended Complaint
> that Plaintiff wants to disclaim as "unconscionable" only that portion

---

[18] Although a court properly can order specific performance of only part of a
contract if it deems another portion unworkable, and although specific performance
may not be obtained when a contract is unfairly procured by overreaching, induced
by means of oppression, or is harsh or unjust, these narrow exceptions serve only
to protect the party against whom specific performance is sought, in this case LP.
See Cavenaugh v. Cavenaugh, 317 N.C. 652, 657, 347 S.E.2d 19, 23 (1986);
Harris v. Harris, 307 N.C. 684, 688, 300 S.E.2d 369, 372 (1983); Hutchins v.
Honeycutt, 286 N.C. 314, 318-19, 210 S.E.2d 254, 257 (1974).

of the warranty which expressly provided "a different amount" of recoverable damages.  Plaintiff hopes that if the Court deems the portion of the warranty which expressly provided "a different amount" of recoverable damages as "unconscionable," Defendant will have to pay more than what it promised to pay in the express warranty.

Simply put, the warranty expressly states that Defendant will "compensate the owner for the repair and replacement of the affected trim for [no] more than twice the original purchase price of the affected trim[.] Plaintiff wants to collect more remuneration from Defendant than that which the warranty expressly provides and attempts to do so by claiming the quoted language is "unconscionable."

Id. at **8-9.

The court then stated: "Even accepting the factual allegations as true, Defendant's combined knowledge about the product and its limitation of liability language in the express warranty does not render the <u>language</u> of the express warranty 'unconscionable.'" <u>Id.</u> at * 9.  The court found that the limited warranty's express terms were binding on both the plaintiff and the defendant, and that the plaintiff's attempt to seek a ruling that the warranty was unconscionable was

impossible to reconcile with the breach of express warranty claim.  On the one hand, Plaintiff wants to avail himself of the express warranty, but then have this Court declare the relief accorded to him in that same warranty unconscionable so that he may seek unlimited damages.  The Court declines to do so.

Id.

Finally, allowing Plaintiffs to recover extra-contractual relief after the statute of repose has run most certainly would <u>not</u> advance the purpose of the statute of

repose. As Plaintiffs acknowledge in their brief, the North Carolina Supreme Court has stated that "the obvious intent of the legislature" in enacting a statute of repose, is "to limit . . . the manufacturer's liability after a certain period of years had elapsed from the date of initial purchase for use or consumption." See Tetterton v. Long Mfg. Co., 314 N.C. 44, 56, 332 S.E.2d 67, 74 (1985); see also Pl.-Appellants' Br. at p. 39. If Plaintiffs are allowed to seek extra-contractual relief after the expiration of the statute of repose, it would allow Plaintiffs to circumvent the temporal limitation on liability created by the statute of repose. This completely undermines the statute's purpose.

As explained above, there is no question that Plaintiffs have sought extra-contractual relief from the beginning of this case, and continue to do so, even under their newly devised theory, which they claim is "akin" to specific performance. Plaintiffs have never sought the specific contractual relief provided in LP's express limited warranty. Accordingly, for the reasons set forth above, this Court should affirm the District Court's grant of summary judgment.

## II. The District Court did not abuse its discretion in decertifying the class where a multitude of necessary individualized determinations destroy typicality, predominance, and otherwise foreclose class certification.

### A. Standard of Review

"'[D]istrict courts have wide discretion in deciding whether or not to certify a class and their decisions may be reversed only for abuse of discretion.'"

Gunnells v. Health Plan Svcs., Inc., 348 F.3d 417, 424 (4th Cir. 2003).  In this case, the ruling on appeal includes the decertification of the class.

Pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, "[a]n order that grants or denies class certification may be altered or amended before final judgment."  The Court possesses "wide discretion" to decertify a class pursuant to Rule 23(c)(1)(C), which provides that a court may issue an order altering or amending an order granting class certification at any time before final judgment is entered.  Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 179 (4th Cir. 2010).  As this Court has observed, "certification is conditional," and should class certification prove inappropriate at any point during the course of litigation, the court "may simply decertify the class."  Brown v. Nucor Corp., 576 F.3d 149, 159 (4th Cir. 2009).

### B.    Argument

#### 1.    The claims of the class fell with the claims of the named Plaintiffs.

As recognized time and again by the Supreme Court, a class representative must be part of the class and possess the same interest and the same injury as the class members.  See E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) (named class representatives not qualified to be line drivers so could not lead class challenging discrimination against them); Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147,156-158 (1982); Blum v. Yaetsky, 457 U.S. 991, 1002

27

(1982) (dismissing claims of patients moved to a higher level of care on the basis of standing where named representatives included patients moved to a lower level of care).

Where, as here, specific class representatives obtained certification on the basis that their claims are representative of the claims of all absent class members, the case should rise or fall based on the facts of their individual claims. Broussard v. Meineke, 155 F.3d 331, 338 (4th Cir. 1998) ("The premise of a class action is that litigation by representative parties adjudicates the rights of all class members. . . ."). "[A]s goes the claim of the named plaintiff, so go the claims of the class." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998).

As set forth above, there is no question that the claims of the named Plaintiffs were filed beyond the six-year statute of repose, and that the named Plaintiffs were seeking damages. Thus, the named Plaintiffs' claims are barred by the statute of repose, and the named Plaintiffs literally have no cause of action. Summary judgment as to the named Plaintiffs' claims therefore was appropriate, and, accordingly, the class must fall with the claims of the named Plaintiffs. See O'Shea, 414 U.S. at 494 (explaining that, if the named plaintiff purporting to represent a class cannot establish the requisite of a case or controversy with the defendants, the plaintiff may not "seek relief on behalf of himself or any other member of the class").

**2.    The District Court did not abuse its discretion in decertifying the class.**

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides that a class action may be maintained only if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Conversely, if a class has been certified, once it becomes apparent that individualized issues "will predominate or render the case unmanageable," the court has the responsibility to decertify the class.  See Gunnells, 348 F.3d at 433.

In decertifying the class, the District Court found:

> *Christie* now directs that the statute of repose *does* bar an action for damages, even if the terms of the warranty extend beyond the applicable period of repose.  Therefore, the task of determining which plaintiffs would be permitted to bring an action for damages would necessarily require an individualized determination of "the latter of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement." N.C. Gen. Stat. 1-50(a)(5).  The necessity for such a determination does in fact destroy "typicality, . . . predominance, [and] otherwise foreclose class certification." *Gunnells v. Heathplan Services, Inc.*, 348 F.3d 417, 427-428 (4th Cir. 2003).    Accordingly, pursuant to Rule 23(c)(1)(3) of the Federal Rules of Civil Procedure and in light of the Court's broad discretion to certify or decertify a class action, *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010), the class certified by this Court's July 18, 2011, order is hereby DECERTIFIED. Members of the former class may proceed with their claims solely on an individual basis.

(JA 3247; DE 216 at 4.)

29

The statute of repose is a substantive right of LP, and does, in fact, require individualized determinations that defeat class certification. A "statute of repose is not an affirmative defense"; it is a condition precedent to a party's right to maintain a lawsuit. Whittaker v. Todd, 176 N.C. App. 185, 187, 625 S.E.2d 860, 862 (2006) (emphasis added). "'Statutes of repose operate differently from statutes of limitation. The term 'statute of repose' is used to distinguish ordinary statutes of limitation from those statutes that impose a deadline for filing suit unrelated to the actual accrual of the cause of action. A statute of repose serves as an unyielding and absolute barrier that prevents a plaintiff's right to bring suit even before his cause of action may accrue and functions to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed time period.'" Roemer at 817, 660 S.E.2d at 923-24 (quoting John N. Hutson, Jr. & Scott A. Miskimon, North Carolina Contract Law § 16-17 at 798-99 (2001) (emphasis added)).[19]

---

[19] Plaintiffs' assertion that there "is a legion of . . . authority for the proposition that individualized statute of limitations inquiries does not *necessarily* defeat predominance or otherwise foreclose class certification" (Pls.-Appellants' Brief at pp. 24) is irrelevant, as it ignores the significant distinction between statutes of repose and statutes of limitations explained above.

In addition, North Carolina law is clear that unlike the statute of limitations, a statute of repose "creates substantive rights that may not be tolled by equitable considerations." Henderson v. Park Homes, Inc., 147 N.C. App. 500, 504, 555 S.E.2d 926, 929 (2001); see also Jones v. Saxon Mortg., Inc., 537 F.3d 320, 327 (4th Cir. 1998) ("[A] statute of repose is typically an absolute time limit beyond

As the District Court recognized, the District Court must determine, as a condition precedent to allowing each plaintiff and class member to pursue claims as part of this lawsuit, whether each claim was filed within or outside of the statute of repose.

In this case, the relevant date triggering the statute of repose is not when each class member's home was completed, but rather, when the Trimboard was first purchased for installation on each home. See, e.g., Henderson, 147 N.C. App. at 503-04, 555 S.E.2d at 928-29. Because the class was certified as a damages class, the statute of repose dictates which absent class members can appropriately seek damages under the framework discussed supra. This would require, as to each member of the class, a determination of the identity of the contractor or

which liability no longer exists and is not tolled for any reason. To permit tolling of a statute of repose would upset the economic best interests of the public as a whole."). The statute of repose is not tolled by the filing of a class action lawsuit. See Cacha at 27-30, 554 S.E.2d at 392-93. "'[W]hile equitable doctrines may toll statutes of limitation, *they do not toll substantive rights created by statutes of repose.*'" *Id.* at 28, 554 S.E.2d at 392 (quoting Monson v. Paramount Homes, Inc., 133 N.C. App. 235, 240, 515 S.E.2d 445, 449 (1999)). North Carolina's courts have explicitly rejected the argument that American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), supports equitable tolling of the statute of repose for absent class members. *See id.* Other courts around the country have done the same. See, e.g., In re: Lehman Bros. Sec. & ERISA Litig., 800 F. Supp. 2d 477, 481-82 (S.D.N.Y. 2011) (rejecting the argument that the statute of repose is equitably tolled by the filing of a class action complaint); Albano v. Shea Homes Ltd. P'ship, 227 Ariz. 121, 127-28, 254 P.3d 360, 367-68 (2011) (holding that while the timely filing of a class action complaint in Arizona may toll the applicable statute of limitations for absent class members until an order denying class certification is entered, such tolling does not apply to the absolute bar of the statute of repose).

subcontractor who purchased the TrimBoard for installation on the class member's home, when that purchase was made, and when the TrimBoard was installed. As the District Court recognized, the need for such individualized determinations as to each class member to determine whether a claim is barred by the statute of repose necessarily destroys typicality, predominance, and otherwise forecloses class certification. See, e.g., Gunnells, 348 F.3d at 434. Accordingly, as noted by the District Court, the only appropriate path forward is to allow persons who were former members of the class to proceed with their claims solely on an individual basis.

Plaintiffs argue that the District Court "erred" in decertifying the class, but, notably, do not make any clear argument that the District Court abused its discretion, which is the showing required to overturn the District Court's decision to decertify. The crux of Plaintiffs' argument is that the District Court "misapprehended" Gunnells, which the District Court cited in its Order. In fact, it is Plaintiffs who misapprehend (and misconstrue) both Gunnells and the District Court's holding. This Court, in Gunnells, found that individual damage determinations did not necessarily foreclose class certification as to the corporate defendant – this Court did not hold, however, that the necessity of individualized

damage determinations could never foreclose class certification.[20] The District Court applied <u>Gunnells</u> correctly, recognizing that in certain circumstances, such as the District Court found in this case, the necessity of individualized damage determinations can, in fact, destroy typicality, predominance, and otherwise foreclose class certification.   This Court, in <u>Gunnells</u>, also found that claims against individuals required proof of elements not necessary to the claim against the corporate defendant, and that the District Court had abused its discretion in ignoring individualized determinations those elements would require.  <u>See</u> <u>id.</u> at 433.  Furthermore, this Court went on to find that, if "it becomes apparent that individual damage issues will predominate or render the case unmanageable," the trial court has the responsibility to decertify the class.  <u>Id.</u>

In addition to the statute of repose determinations recognized by the District Court, it is difficult to imagine a case involving more highly individualized issues than this one.  In light of the fundamental elements of a breach of express warranty claim, this case would require detailed inquiries, as to each plaintiff and class member, into:

- whether a claim was made under the warranty;

- whether LP was given an opportunity to respond to any claim made under the warranty;

---

[20] This Court, in <u>Gunnells,</u> noted that the damages calculations were not complex and had in large part already been calculated.  348 F.3d at 429-30.

33

- whether some or all of the trim on the structure is actually TrimBoard;

- the amount of damaged TrimBoard on each home;

- when the TrimBoard was first purchased for use or consumption and by whom;

- when the TrimBoard was installed on each home;

- the cause of any such damage, including whether the damage is traceable to improper installation;

- whether LP's warranty offer was consistent with the terms of the warranty.

Such individualized determinations made decertification appropriate.

Accordingly, the District Court did not abuse its discretion in decertifying the class where it found individual determinations, specifically including the application of the statute of repose, would predominate, and its decision to do so should be affirmed.[21]

---

[21] Interestingly, Plaintiffs apparently also concede in their brief that this class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy" as required by Rule 23. Specifically, Plaintiffs acknowledge that under their current theory, they are seeking something akin to a declaratory judgment or an advisory opinion that the warranty should be reformed, as they intend to have LP resolve everything else in its warranty claims process. (See Pl.-Appellants' Br. at p. 18.) Such admission confirms that there is no need for a class action in this case or that proceeding by way of a class action is a superior method for adjudicating the dispute. Furthermore, as noted supra, because Plaintiffs have no underlying substantive cause of action for breach of express warranty due to application of the statute of repose, they have no standing upon which to pursue such declaratory relief and there is no actual dispute that would give rise to Plaintiffs' right to seek a declaratory judgment.

34

**III.** **Plaintiffs' appeal of an issue, raised for the first time in Plaintiffs' motion to reconsider in the District Court, should be dismissed for lack of jurisdiction where Plaintiffs have not filed a timely notice of appeal from the order denying that motion. In the alternative, the District Court did not abuse its discretion in denying Plaintiffs' request to substitute new class representatives where the District Court already ruled that class certification was inappropriate based upon the predominance of individualized issues.**

    **A.** **This Court does not have jurisdiction to decide whether the District Court correctly denied Plaintiffs' request to substitute new class representatives, as Plaintiffs did not file a timely notice of appeal from the order denying that motion.**

Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure provides that a notice of appeal must "designate the judgment, order, or part thereof being appealed." A notice of appeal must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(1)(A). The Court may not extend time to file a notice of appeal. Fed. R. App. P. 26(b)(1). An appeal should be dismissed for lack of jurisdiction when a party does not file a timely notice of appeal from an order. See Elezovic v. England, 200 F. App'x 193, 194-95 (4th Cir. 2006) (dismissing portion of appeal from order denying Rule 60(b) relief where plaintiff did not file timely notice of appeal from that order); see also Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988) (finding no jurisdiction over appeal where appellant failed to comply with Rule 3(c)).

The Notice of Appeal filed by Plaintiffs on September 27, 2013 appeals only "from the Order and Judgment filed in this action on September 3, 2013 (DE 216,

217) and all orders and opinions that merge into that judgment." (JA 3274; DE 221.) Plaintiffs' request to substitute plaintiffs was raised for the first time on September 17, 2013, when they filed their motion seeking relief from/reconsideration of the District Court's order. (JA 3251; DE 219.) Plaintiffs have not filed a notice of appeal from the District Court's November 12, 2013 Order (JA 332; DE 230), which denied Plaintiffs' motion for relief from judgment pursuant to Rule 60(b) or in the alternative to reconsider. Nor did Plaintiffs seek leave to amend their Notice of Appeal. As a result, the appeal of this issue should be dismissed for lack of jurisdiction.

>  **B.   In the alternative, the District Court did not abuse its discretion denying Plaintiffs' request to substitute new class representatives.**

>  >  **1.   Plaintiffs' request that they be allowed to substitute new class members – first made after summary judgment had been granted and after the class had been decertified – came too late.**

Should this Court nevertheless decide to consider this issue on appeal, this Court should find that the District Court did not abuse its discretion by denying Plaintiffs' request to substitute new class representatives. Plaintiffs represent to this Court that, in their opposition to LP's motion for summary judgment, they sought an opportunity to intervene and substitute class members. (Pls.-Appellants' Br. at p. 9.) In fact, Plaintiffs did not seek to "substitute" new class representatives until they filed their motion seeking relief from/reconsideration of the order

36

granting summary judgment to LP.  (JA 3254-64; DE 220.)  Nowhere in Plaintiffs'

opposition to LP's motion for summary judgment did they raise the prospect of

substitution.

It is well-established that a party cannot use a motion to reconsider to make

new arguments for the first time.  See Potter v. Potter, 199 F.R.D. 550, 553 (D.

Md. 2001); see also Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507,

509 (W.D.N.C. 2003).  Otherwise,

> [h]indsight being perfect, any lawyer can construct a new argument to
> support a position previously rejected by the court, especially once the
> court has spelled out its reasoning in an order.  It is hard to imagine a
> less efficient means to expedite the resolution of cases than to allow
> the parties unlimited opportunities to seek the same relief simply by
> conjuring up a new reason to ask for it.

Potter, 199 F.R.D. at 553.

LP raised decertification in its Memorandum in Support of Motion for

Summary Judgment, stating: "Because the alleged unconscionability of the terms

and limitations contained in LP's express warranty for TrimBoard was found to

establish the predicate of commonality and predominance necessary to maintain

this case as a class action, Plaintiffs' inability to pursue their theory of

unconscionability because the statute of repose bars their breach of warranty claim

requires decertification."  (JA 3166; DE 209 at 6, n.1.) As a result, Plaintiffs could

have raised this suggestion in opposing LP's motion for summary judgment, and

could not have been surprised by the District Court's decertification order.  This

argument was not properly brought forward for the first time in a Rule 60(b)(6) motion or motion for reconsideration.

The District Court did not abuse its discretion denying Plaintiffs' untimely request to substitute new plaintiffs.

> **2.    Even had a timely request to substitute been made, the circumstances of this case do not warrant substitution.**

As set forth above, the named Plaintiffs' claims are barred by the statute of repose, and individualized issues – including whether claims are barred by the statute of repose – preclude class certification in this case.  Where the class properly was decertified due to the inherent predominance of individualized issues, there is no reason to allow new plaintiffs to be substituted.  In light of this, the District Court did not abuse its discretion in denying the request to substitute new Plaintiffs.  It was not an abuse of discretion for the District Court to direct that "each member may proceed with their claims on an individual basis."  (JA 3246-3248; DE 216 at pp. 3-5 (emphasis added).)

The cases cited by Plaintiffs to support their argument that substitution should be allowed are inapplicable to this case.  More than one of the cases cited by Plaintiffs involve a situation where the claims of the named class members became moot – not cases where the Plaintiffs' claims were dismissed on the merits, as here.  See, e.g., Kremens v. Bartley, 431 U.S. 119 (1977) (substitution allowed in class action involving challenge to constitutionality of statutes governing the

involuntary commitment of minors to state mental institutions, where law changed during pendency of case such that claims of named plaintiffs, who were older than 14 and under new law could no longer be involuntarily admitted or held by a parent, became moot); Vaughns v. Bd. of Educ., 574 F. Supp. 1280 (D. Md. 1983) (substitution allowed in school desegregation case where plaintiffs' children were no longer enrolled in the school system).

Other cases discussed by Plaintiffs are inapplicable because they involve certification decisions made prematurely and/or without sufficient explanation, not a belated denial of a request to substitute following a carefully considered decision to decertify a class on the eve of trial after five years of proceedings.  See, e.g., Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1268-69 (4th Cir. 1981) (finding district court acted prematurely where it denied certification in a brief letter to counsel with no hearing and no explanation); Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978) (finding court acted prematurely and without sufficient factual information in denying certification). There is no basis for any assertion in this case that the District Court acted prematurely in reaching its decision.

Finally, and perhaps most importantly, most of the cases cited by Plaintiffs involve claims of race or gender discrimination under Title VII,[22] which are an entirely different breed of purported class action, often qualifying for class status under Rule 23(b)(2) of the Federal Rules of Civil Procedure, and which "lend themselves generally to class treatment.  Goodman, 584 F.2d at 1331.  Rule 23(b)(2) is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.  See, e.g., Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162 (2d Cir. 2001). This case was certified as a damages class under Rule 23(b)(3), the  subsection of Rule 23(b) which allows for individualized monetary damages.  (See JA 1036, DE 100.)

The cases cited by Plaintiffs should not alter the outcome here.  Substitution of plaintiffs is improper where individualized issues predominate and foreclose class certification, as here.

---

[22] See, e.g., Reynolds v. Sheet Metal Workers, Local 102, 702 F.2d 221 (D.C. Cir. 1981); Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259 (4th Cir. 1981); Goodman v. Schlesinger, 584 F.2d 1325 (4th Cir. 1978); Cox v. Babcock & Wilcox Co., 471 F.2d 13 (4th Cir. 1972); Dameron v. Sinai Hosp. of Baltimore, Inc., 595 F. Supp. 1404 (D. Md. 1984).

### 3.    Judicial estoppel is inapplicable to this case.

In a last-ditch effort to salvage the class action, Plaintiffs inexplicably suggest to this Court that LP is judicially estopped from taking inconsistent positions (see Pls.-Appellants' Br. at p. 33) and that *LP* is the reason that the *Ellis* plaintiffs never previously sought to intervene (see id. at pp. 32-33).

Judicial estoppel is inapplicable to this case. In <u>Zinkand v. Brown</u>, 478 F.3d 634 (4th Cir. 2007), the case cited by Plaintiffs regarding judicial estoppel, provides:

> Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court.  Three elements must be satisfied before judicial estoppel will be applied.  First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation.  The position at issue must be one of fact as opposed to one of law or legal theory.  Second, the prior inconsistent position must have been accepted by the court.  Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.  This bad faith requirement is the determinative factor.

Id. at 638 (internal citations and quotation marks omitted).

Plaintiffs' assertion that judicial estoppel applies fails as to each element. First, with regard to the first and third elements, LP has not taken inconsistent positions, and there is absolutely no evidence to suggest that LP has done anything to intentionally mislead the Court to gain an unfair advantage.  Though LP certainly agrees that the <u>Ellis</u> plaintiffs were unnamed members of the class

pursuing a contract remedy in Hart, LP has never indicated that it would not defend against those claims in Hart, but rather has contested vigorously those claims from the beginning. More importantly, LP never agreed that those making claims in Hart would be entitled to recover damages beyond the remedy provided in the express warranty, which is what Plaintiffs are seeking here.

Furthermore, this Court did not have to "accept" any position taken by LP to reach the conclusion it reached in Ellis. In the complaint filed in the Western District of North Carolina, the Ellis plaintiffs[23] admitted that their warranty claims were "addressed in a separate ongoing class action, in which Plaintiffs are putative class members, asserting only breach of express warranty causes of action." (JA 3301 at ¶ 29.) The Ellis plaintiffs then acknowledged that the named Plaintiffs in the Hart case had filed their suit outside the six-year statute of repose, and

---

[23] On April 18, 2011, Bianca Ellis, Mark Sroka, and Jacqueline Sroka filed a class action complaint in the Western District of North Carolina, asserting claims for negligence and unfair and deceptive trade practices, and seeking declaratory relief. (See JA 3295.)   In that complaint, Ellis alleged her residence was completed in August 2005, and the Srokas alleged that their home was completed in 2006. (See id. at ¶¶ 8-9.)   Ellis and the Srokas alleged that their warranty claims "are addressed in a separate ongoing class action, in which Plaintiffs are putative class members, asserting only breach of express warranty causes of action.... Accordingly, Plaintiffs make no claim here for breach of express warranty." (Id. at ¶ 29.) Neither Ellis nor the Srokas moved to intervene or asked the Court to be added as plaintiffs to assert their warranty claims in the Hart action.   LP  filed  a motion to dismiss the Ellis complaint on June 14, 2011.  On November 8, 2011, the Ellis motion to dismiss was granted in its entirety.  Ellis and the Srokas appealed that decision to this Court, which upheld the dismissal on November 2, 2012.  See Ellis v. Louisiana-Pacific Corp., 699 F.3d 778 (4th Cir. 2012).

acknowledged that LP had not consented to adding Ellis and the Srokas to the <u>Hart</u> suit. (<u>See</u> <u>id.</u> at n. 1.) Nowhere in <u>Ellis</u> did this Court indicate that it based its decisions upon representations made by LP. In fact, it appears that this Court relied upon concessions by the <u>Ellis</u> plaintiffs in determining that they could not pursue tort claims in <u>Hart</u> because there existed a warranty under which they were pursuing a claim: "The *Hart* complaint asserts *only* a breach of express warranty claim because North Carolina's statute of repose barred any tort claims that the class plaintiffs could have asserted. <u>Appellants concede</u> that they are also members of the *Hart* class and 'acknowledge that they have no express warranty claim in the present lawsuit because they are putative class members [in *Hart*]." <u>Id.</u> at 782 (underlined emphasis added).

Finally, it is unfair for Plaintiffs to suggest that they relied upon LP – their adversary in this lawsuit – in their decision not to have the <u>Ellis</u> plaintiffs intervene. The <u>Ellis</u> plaintiffs knew even before they filed their lawsuit that the <u>Hart</u> plaintiffs were seeking damages beyond the specific contractual relief provided by the warranty, and they knew that they were distinguishable from the <u>Hart</u> plaintiffs in that their claims were not – at that time – barred by the statute of repose. Nevertheless, despite the fact that LP would not consent to an amendment to add the <u>Ellis</u> plaintiffs to the <u>Hart</u> case (<u>see</u> JA 3319), and despite clear law that provides that the statute of repose is not tolled by equitable considerations (<u>see</u>

footnote 13, <u>supra</u>), neither Ellis nor the Srokas moved to intervene in the <u>Hart</u> case.

Accordingly, for the foregoing reasons, should this Court decide this issue on the merits in lieu of dismissing it for lack of jurisdiction, then this Court should uphold the District Court's denial of the request to substitute new plaintiffs.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should affirm the District Court's order, which granted summary judgment to LP and decertified the class. This Court should dismiss the issue related to Plaintiffs' request to substitute new plaintiffs for lack of jurisdiction, or, in the alternative, affirm the District Court's denial of Plaintiffs' request to substitute new plaintiffs.

Respectfully submitted, this the 24th day of March, 2014.

<u>/s/ Richard T. Boyette</u>
Richard T. Boyette, NC Bar No. 7623
E-mail:  rtb@cshlaw.com

<u>/s/ Meghan N. Knight</u>
Meghan N. Knight, NC Bar No. 35384
E-mail:  mknight@cshlaw.com
Cranfill Sumner & Hartzog LLP
P.O. Box 27808
Raleigh, NC 27611-7808
Telephone:  (919) 828-5100
Facsimile:  (919) 828-2277

*Attorneys for Defendant Louisiana-Pacific Corp.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(b) because:

       this brief contains <u>12,025</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

       this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word in 14 point Times New Roman.</u>


                   /s/ Richard T. Boyette
                   Richard T. Boyette

                   *Counsel for Appellee*

Dated:  March 24, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on March 24, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Daniel K. Bryson, Esq.
Scott C. Harris, Esq.
WHITFIELD, BRYSON, & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
dan@wbmllp.com
scott@wbmllp.com

Auley M. Crouch, III, Esq.
Christopher K. Behm, Esq.
BLOCK, CROUCH, KEETER, BEHM,
  & SAYED, LLP
P.O. Box 4
Wilmington, NC 28402
acrouch@bcklawfirm.com
cbehm@bcklawfirm.com

Gary E. Mason, Esq.
Nicholas A. Migliaccio, Esq.
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste 605
Washington, DC 20036
gmason@masonlawdc.com
nmigiliaccio@wbmllp.com

Joel R. Rhine, Esq.
Jean S. Martin, Esq.
RHINE LAW FIRM, PC
314 Walnut Street, Ste 1000
Wilmington, NC 28401
jrr@rhinelawfirm.com
jsm@rhinelawfirm.com

*Counsel for Appellants*

John P. Sweeney
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW, Ste 1350
Washington, DC 20036
jsweeney@babc.com

James E. Weatherholtz
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
P.O. Box 999
Charleston, SC 29402
jweatherholtz@wcsr.com

*Co-counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street
Suite 230
Richmond, VA  23219